## A97A1863. YOUNG et al. v. KITCHENS.
(492 SE2d 898)

BIRDSONG, Presiding Judge.

Appellant/plaintiff Delbert Young, as legal guardian of Stephen Robert Young and Patrick Matthew Young, minor children, appeals the order of the superior court granting summary judgment to appellee/defendant Wendell Ward Kitchens.

This appeal arises from a suit for damages for personal injury, pain and suffering by the deceased Dennis James Young. Young sustained fatal injuries in a traffic incident in which a vehicle driven by appellee struck and killed him. On the evening of February 2, 1994, Young was driving his girl friend, Weaver, in his automobile. Young's automobile broke down, and he and his girl friend commenced walking eastbound on the right side of Frontage Road, a two-lane access road to Interstate 20. The night was dark. Earlier, Young had consumed approximately a quart of beer, but in his girl friend's opinion, he was not drunk at the time of the incident. Young was wearing blue jeans, a white shirt that had a hood on it, a deer-skin leather jacket with fringes on it, and white tennis shoes. Weaver was wearing blue jeans, a white shirt, and a shiny medium-colored blue jacket of satiny-looking material. At times, Young would walk on the shoulder of the road, and at times he would walk in the roadway itself. Several cars passed the couple without incident; traffic was light to moderate.

Miller was driving his car eastbound on Frontage Road when he had to swerve suddenly across the yellow centerline to avoid a man, later identified as Young, who was walking in the roadway with his back to oncoming cars. Miller testified that both the night and the man's clothing were dark and that he saw the man only because of his white tennis shoes. After Miller sounded his car horn, Weaver and Young "[g]ot out of the way" of traffic and continued down the roadway. In the meantime, Miller turned his car around to warn the man to get out of the road; as he approached the couple, he saw another car approaching. There was a blur in front of the oncoming car's headlights followed by screaming.

The oncoming car, which was traveling eastbound, was driven by appellee who was approximately one and one-half miles from his house. Appellee was accompanied by his wife. The weather was clear, and at the accident site, there was no hill or curve which blocked appellee's view. Appellee's vehicle was traveling 35 to 40 mph, the headlights were on, and appellee was looking straight down the street. Appellee testified without contradiction that just as he crested an incline in the road, he observed the headlights of Miller's oncoming automobile; he did not see Young in the roadway until his vehicle was approximately three or four feet away from him. Appellee's wife

screamed, and appellee's car struck Young. If it had been daylight, Young would have been visible possibly from a distance of 300 to 600 feet. (There is some evidence in the record that it was approximately one-tenth of a mile from the declining side of the hill crest to the point of impact.) Weaver testified that at the time of the impact Young and she both were "walking close to the road," although she does not remember the actual impact. Appellee immediately stopped his car in the eastbound travel lane and ran back to where Young was lying on the ground just off to the right of the roadway; Miller also stopped and attempted to assist. Miller observed that Young was injured and was trying to speak; Miller then went back to his car to phone for assistance.

While in his car, Miller observed another car approaching. This car was unable to stop so it swerved onto the shoulder of the road, hitting the open door of appellee's car and allegedly running over Young who was lying injured on the ground approximately three to five feet off to the right of the roadway. The driver of this vehicle fled the scene. Young died as a result of this incident.

Appellee testified by way of deposition that he was returning home from visiting his grandson; when he visits his grandson, he travels a particular route that includes a portion of the access road. As he was driving on the access road at the Oxford Road intersection, he "remembered seeing the headlights of another car coming. And [he does not] remember just where that car was at, but all at once [he] got a glimpse of a person coming from my right to my left. And about that time my wife hollered, and about then at that time, I hit [the person]." He struck Young with the right headlight and right portion of the windshield of his car. Appellee further testified that the glare from the headlights "could have" had some effect on his vision; he just knows that he did not see Young until he was three or four feet from him at which time he immediately hit his brake either a split second before or at impact. Although unable to remember all the details of the impact, appellee's wife testified that Young had "just stepped out in front of us quickly," but she just saw a glimpse of this and does not know which way he was facing; the right-hand side of their car struck Young, and she did not see Young until the car hit him. In a subsequent deposition, appellee's wife testified that she did not see Young before their car hit him, and nothing else brought Young to her attention before impact.

Appellant's sole enumeration is that the trial court erred in granting summary judgment to appellee, as its holding was based on an erroneous conclusion that appellant was unable to point to any evidence in the record which tends to show that appellee breached his duty to Young. *Held*:

1. Appellant's brief is replete with inaccurate citations as to the

volume and page of cited precedent. As officers of this Court, counsel have a duty to use due diligence in providing accurate citations of authority in their appellate briefs.

2. In granting summary judgment in behalf of appellee, the trial court stated inter alia, "[d]efendant contends that [p]laintiff is unable to point to any evidence in the record which tends to show that [d]efendant breached his duty of care. The court agrees." The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). At summary judgment a movant/defendant *must demonstrate* by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case. In other words summary judgment is appropriate when the court, viewing all the facts and reasonable inferences flowing therefrom in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case. Id. at 495. At summary judgment a movant/defendant may discharge his burden by pointing out by reference to the affidavits, depositions, and other documents in the record that there is an absence of evidence to support the non-moving party's case. If the moving party discharges this burden, the non-moving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. Id. at 491. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all reasonable inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843).

3. While it is clear that the deceased, at the time of impact, was not in compliance with the provisions of OCGA § 40-6-96 pertaining to pedestrians walking on or along a roadway, questions of contributory negligence, comparative negligence, and the exercise of due care for one's own safety also are questions which ordinarily are not susceptible to summary adjudication. *Thompson v. Crownover*, 259 Ga. 126, 129 (5) (381 SE2d 283).

During his deposition testimony, appellee gave an unqualified negative response to the question whether there was "anything obstructing or blocking [his] view of Mr. Young . . . within a quarter mile of the incident." Any evidence offered by appellee in contradiction to this testimony and for which no reasonable explanation was tendered as to the reason for the inconsistency would be subject to the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680). *Gentile v. Miller, Stevenson &c., Inc.*, 257 Ga. 583 (361 SE2d 383). No reasonable explanation has been tendered for any discrepancy arising as to appellee's testimony that there existed

an unobstructed distance of a quarter-mile. Thus, it must be accepted that there existed no type of obstruction which would block appellee's view within a quarter-mile from the scene of the incident. Id.

However, even if the unobstructed distance were only one-tenth of a mile, our disposition of this case would remain the same. Further, although appellee testified that the oncoming car's headlights cast "some glare" or "a certain amount of glare" on him and "could have had some effect" on his vision, at no time did he testify that he was blinded by or rendered incapable of seeing by the oncoming car's headlights. Several cars passed the deceased, Young, without incident. Although Young was dressed in dark clothing, Miller was able to see his white tennis shoes and avoid striking him. Weaver testified without contradiction that as she and Young walked they were always close enough to converse with each other; the jacket she was wearing was medium or cornflower blue of a shiny, satiny-material, it was not really that dark; and, if a light were to shine on it, "you could see it."

OCGA § 40-6-93 provides: *"Notwithstanding other provisions of this chapter,* every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, shall give warning by sounding his horn when necessary, and shall exercise proper precautions upon observing any child or any obviously confused, incapacitated, or intoxicated person." (Emphasis supplied.) In this regard, "[t]he driver of a motor vehicle has no right to assume that the road ahead of him is clear of traffic [or pedestrians], and he must maintain a diligent outlook therefor." *Leggett v. Brewton,* 104 Ga. App. 580, hn. 3 (122 SE2d 469); *Lorig v. Brunson,* 84 Ga. App. 558, 562 (66 SE2d 268) (driver must maintain vigilant lookout for pedestrians on the road). " '[N]egligence, like any other fact, may be proved by circumstantial as well as by direct testimony.' " *Cagle v. Atchley,* 127 Ga. App. 668, 669, 675 (5) (194 SE2d 598); see OCGA § 24-1-1. Lack of due diligence is susceptible to proof by circumstantial evidence. See *Cagle,* supra; OCGA § 24-1-1. A jury could, based on the posture of the evidence in this appellate record, find that appellee breached his duty to exercise due diligence to ensure the lane in which he was traveling was clear of pedestrian or vehicular traffic. Miller was able to observe Young in time to avoid a collision, various vehicles previously had passed the couple without incident, appellee did not affirmatively testify that he was blinded by oncoming headlights but only that the glare "could have" had an effect on his vision, and Weaver who was walking close to Young was wearing a shiny, medium-blue jacket which could be seen when light hit it. Both Miller and appellee had their vehicle lights on as they approached the couple. As lack of diligence can be established by circumstantial evidence, see *Cagle,* supra; OCGA § 24-1-1, and as there exists no

direct evidence that the oncoming headlights, in fact, blinded appellee, there exists more than one permissible reasonable inference which could be drawn by the factfinder. "OCGA § 40-6-93 (Code Ann. § 68A-504) establishes that motorists on the highways must exercise ordinary care *to discover* and avoid persons in the roadway. . . ." (Emphasis supplied.) *Fountain v. Thompson*, 252 Ga. 256, 257 (312 SE2d 788). "It is the jury's function to draw an inference from the evidence when more than one inference can be drawn." *Thompson v. Crownover*, supra at 130 (6). In view of the posture of the evidence in this case, albeit far from compelling, the trial court erred in granting summary judgment in behalf of appellee. Compare *Fountain*, supra; *Banks v. Payne*, 213 Ga. App. 783 (445 SE2d 826) (physical precedent only), cert. denied, 214 Ga. App. 905.

*Eubanks v. Mullis*, 51 Ga. App. 728 (181 SE 604), relied upon by appellant is distinguishable and not controlling. Also distinguishable and not controlling are the precedents relied upon by appellee, including *Norman v. Williams*, 220 Ga. App. 367 (469 SE2d 366) (could infer from the evidence that the pedestrian ran onto the roadway); *Tucker v. Love*, 200 Ga. App. 408 (408 SE2d 182) (pedestrian ran in front of path of bus during heavy rainfall; jury verdict in favor of bus driver); and *Johnson v. Ellis*, 179 Ga. App. 343 (346 SE2d 119) (pedestrian collided with side of driver's car while attempting to cross street).

*Judgment reversed. Eldridge, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED OCTOBER 21, 1997.

*Slappey & Sadd, James N. Sadd, Grant G. Morain*, for appellants.

*Fortson, Bentley & Griffin, Michael C. Daniel*, for appellee.