## A09A1875. MAYO et al. v. OLD DOMINION FREIGHT LINE, INC.

### (689 SE2d 837)

MIKELL, Judge.

Crystal and Arthur Mayo, individually, and Crystal Mayo, as administrator of the estate of Arthur James Mayo, appeal the trial court's grant of summary judgment to Old Dominion Freight Line, Inc. ("Old Dominion"), on their claim for the wrongful death of their son, Arthur James Mayo.[1]

> On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law.[2]

Because genuine issues of material fact exist in the instant case, we reverse.

Viewed in favor of the nonmovant, the record shows that the decedent was killed at approximately 1:00 a.m. on January 31, 2006, when he was struck on Highway 112 by a tractor-trailer owned by Old Dominion and operated by Jameel Shamsid-Deen. Before Shamsid-Deen struck the decedent, the car in front of him, driven by Jameson Farley, in which Daniall Farley, Jameson's brother, was a passenger,[3] swerved to the left and avoided hitting the decedent. The decedent was naked and standing in the middle of the Farleys' lane of travel, with his arms up in the air.

Daniall testified that he, his brother Jameson, and his cousin were on their way home from work on the evening in question, traveling south on Highway 112; that it was a clear night; that Highway 112 was a two-lane highway separated by a yellow line that had no paved shoulder or sidewalk on either side of the road; that the Farleys stopped at a store briefly then turned right to proceed south on Highway 112; and that Jameson was obeying the speed limit of 55 miles per hour. Daniall further testified that after about five minutes, he noticed headlights behind them; that he knew the headlights were from a tractor-trailer because the truck was close to them and its lights shone through the car; that the tractor-trailer was traveling

---

[1] The Mayos' wrongful death claim was raised as a counterclaim to Old Dominion's complaint for breach of contract, which alleged that the parties agreed to settle all claims for $10,000.

[2] (Citation omitted.) *Nichols v. Prather*, 286 Ga. App. 889, 890 (650 SE2d 380) (2007).

[3] During his deposition, Daniall testified that his brother Jameson was incarcerated.

between ten and fifteen feet behind them; and that he turned around and looked at the tractor-trailer but could not see the truck itself because its lights were in his eyes. When asked if the tractor-trailer could have been farther back, Daniall responded that it could have been but that the truck was following them too closely.

Daniall recalled that he was talking to Jameson when his cousin, who was sitting in the middle of the back seat of the car, screamed that there was a man in the road. When Daniall looked up, he could see a silhouette of something standing directly in the middle of their lane. After Jameson swerved and avoided hitting the decedent, Daniall looked back. Though he could not say that he actually saw the truck hit the decedent, Daniall testified that he knew that the truck would hit the man.

Shamsid-Deen testified that he did not see the decedent until the car in front of him swerved to the left; that the decedent was on the right shoulder; and that he swerved to the left as well but did not remember if he applied his brakes. After Shamsid-Deen admitted during his deposition that he had once received a ticket for following too closely, the following colloquy occurred:

Q. You say in this accident you didn't have time to react?

A. I didn't say that.

Q. You did have time to react; is that right?

A. Not really. . . .

Q. You have said that there was a vehicle in front of you that swerved, and you said that that impaired your vision as far as seeing down the road?

A. I didn't tell you anything like that.

Q. Okay. So you could see down the road?

A. I didn't say I could. . . .

Q. Well, you either could or you couldn't see down the road. If you could see down the road . . . you would have seen this young man, wouldn't you? . . .

A. If I could see down the road, yes. . . . It depends on how far down the road you're talking.

Q. Well, there was a vehicle between you and the young man. It was the vehicle that was in front of you, wasn't it?

A. Correct. . . . I saw the young man when the vehicle swerved. . . .

Q. You didn't have time to react, did you?

A. Somewhat. . . .

Q. You didn't apply your brakes until you were headed back to the lane that you swerved out of, correct?

A. I don't remember.

No other testimony was offered as to how close the tractor-trailer was to the Farley vehicle at the time of the accident.

In support of its motion for summary judgment, Old Dominion submitted the affidavit of Georgia state trooper Dale Hobby, who investigated the accident. Hobby averred that based upon his investigation of the accident, the accident occurred when the decedent stepped in front of the truck; that the impact occurred near the centerline of the highway; that Shamsid-Deen was not speeding and could not have avoided the accident; and that Shamsid-Deen was not at fault.[4] Attached as an exhibit to Hobby's affidavit was the police report, which reflects that Shamsid-Deen told Hobby that the decedent was standing near the centerline, and that the occupants of the Farley vehicle said that the decedent was in the roadway. Also attached thereto was the statement of Alice King, who was behind the tractor-trailer and stated that the truck swerved in front of her.

Old Dominion argued at the hearing on the motion for summary judgment that it was entitled to judgment as a matter of law because the decedent assumed the risk, or at the very least, was more negligent than Shamsid-Deen, while the Mayos countered that the accident occurred because Shamsid-Deen was following too closely and could have avoided hitting the decedent had he not been doing so. In opposition to Old Dominion's motion, the Mayos submitted an affidavit from Daniall, who averred that the truck was less than 20 feet behind the Farley vehicle when it swerved to avoid the decedent. In a one-sentence order, the trial court granted summary judgment to Old Dominion on the Mayos' counterclaim for wrongful death.

"[Q]uestions of negligence, diligence, contributory negligence and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases."[5] In the instant case, the evidence is not plain, palpable, and undisputed; rather, the very question of where the decedent was standing when the accident occurred is disputed. Daniall deposed that the decedent was standing in the middle of the street when Daniall's cousin noticed him, when Daniall turned and

---

[4] At a hearing on the motion to strike Hobby's affidavit, Old Dominion acknowledged that at a jury trial, Hobby could not opine as to fault and that Hobby was not qualified as an accident reconstructionist for the purposes of the affidavit. The trial court withheld its ruling on the motion to strike.

[5] (Citations omitted.) *Bussey v. Dawson*, 224 Ga. 191, 193-194 (160 SE2d 834) (1968). See also *Sutton v. Justiss*, 290 Ga. App. 565, 566 (659 SE2d 903) (2008) ("routine issues of negligence cases are generally not susceptible [to] summary adjudication, and . . . summary judgment should not be granted in [those] cases unless the nonexistence of liability is plain, palpable, and indisputable. If reasonable minds can differ on the cause of the injury, the case is not plain, palpable, and indisputable and it should go to the jury") (citation omitted).

saw the decedent's silhouette, and when Jameson swerved to avoid him. Shamsid-Deen testified during his deposition that the decedent was standing on the right shoulder. Daniall testified repeatedly that the tractor-trailer was too close to the Farley vehicle and that consequently, he knew that it would hit the decedent. Old Dominion offered no evidence as to the distance between the Farley vehicle and the tractor-trailer. Under these circumstances, several questions of fact remain, including, but not limited to, whether the decedent was negligent because he stood in the middle of the road or stepped into the road, whether Shamsid-Deen should have seen the decedent in time to react and thereby avoid the accident and thus was negligent because he failed to keep a proper lookout, and whether the decedent's negligence was greater than Shamsid-Deen's. From the evidence, a jury could infer that Shamsid-Deen was following too closely, and that had he not been, he could have avoided the accident; or a jury could conclude that the decedent suddenly stepped into the path of the tractor-trailer, which would negate Shamsid-Deen's liability.[6] Consequently, the instant case is not susceptible to summary adjudication.[7]

In *Fountain v. Thompson*,[8] our Supreme Court addressed the issue of whether the negligence of a drunken pedestrian, who was struck and killed while lying prone in the street, barred recovery where there was also an issue of the driver's negligence.[9] The court concluded that even though the decedent may have been negligent originally in falling on the highway in a drunken state, his negligence did not bar recovery because the driver's negligence was greater as there was nothing obstructing the driver's sight.[10] In so doing, the court examined OCGA § 40-6-93,[11] determining that it established that "motorists on the highways must exercise ordinary care to discover and avoid persons in the roadway."[12] The court also expressly held that a person lying prone in the highway in a drunken condition "is owed a duty of care where he is lying in the open on a

---

[6] See *Johnson v. Ellis*, 179 Ga. App. 343, 345 (346 SE2d 119) (1986) (directed verdict in driver's favor affirmed where there was no evidence that the driver could have or should have seen the plaintiff before he walked into the driver's car).

[7] See *Young v. Kitchens*, 228 Ga. App. 870, 874 (3) (492 SE2d 898) (1997) ("It is the jury's function to draw an inference from the evidence when more than one inference can be drawn") (citation and punctuation omitted).

[8] 252 Ga. 256 (312 SE2d 788) (1984).

[9] Id. at 256-257.

[10] Id. at 257.

[11] The statute provided as follows: ". . . [E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway . . . and shall exercise proper precautions upon observing any child or any obviously confused, incapacitated, or intoxicated person." This language mirrors the content of the statute currently in effect.

[12] *Fountain*, supra at 257.

flat road, even though undiscovered."[13] It follows from *Fountain* that if a driver has a duty to avoid a person lying prone in the middle of the street, a duty also inures to one standing in the middle of the street under the circumstances in the instant case.[14] Therefore, in the instant case, even presuming the decedent's original negligence, we cannot say as a matter of law that his negligence precludes the Mayos' recovery, because a question of fact remains as to whether Shamsid-Deen's negligence was greater.

> It is not true that in any case where the plaintiff voluntarily encounters a known danger he necessarily consents to any future negligence of the defendant. A pedestrian who walks across the street in the middle of a block, through a stream of traffic travelling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall.[15]

This court discussed *Fountain*[16] in *Johnson*[17] and *Tucker v. Love*,[18] but we found in those cases no evidence of negligence on the part of the drivers. In *Johnson*, the evidence showed that the victim was "walking and thus in a state of action to the side of, and not in front of, the moving automobile,"[19] and there was no evidence that the victim was actually on the roadway prior to his moving into the collision.[20] In *Tucker*,[21] there was testimony from other witnesses that the victim did not look before running into the path of a bus and that the bus driver immediately applied his brakes and blew his horn when he saw the victim but could not avoid hitting her.[22] In both cases, we concluded that there was no evidence that the driver could have, or should have, seen the injured plaintiff so as to avoid the

---

[13] Id.

[14] We are not concluding herein that the driver owes a duty to one who jumps or moves suddenly into the driver's path, rendering the driver unable to avoid the collision.

[15] (Punctuation and footnote omitted.) *Findley v. Griffin*, 292 Ga. App. 807, 810-811 (2) (666 SE2d 79) (2008). See also *Little Rapids Corp. v. McCamy*, 218 Ga. App. 111, 113 (1) (460 SE2d 800) (1995) (whole court).

[16] Supra.

[17] Supra at 344.

[18] 200 Ga. App. 408-409 (1) (408 SE2d 182) (1991).

[19] *Johnson*, supra at 345.

[20] Id. Instead, the evidence showed that the injured party collided with the driver's moving car; that the driver did not see him until he rolled over her windshield; and that prior to the accident, the driver had her headlights on and was maintaining a proper lookout. Id. at 344.

[21] Supra.

[22] Id. at 409 (1).

collision.[23] Those cases are inapposite here, however, because the evidence does not demand the conclusion that Shamsid-Deen could not or should not have seen the decedent so as to avoid the collision.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED DECEMBER 4, 2009 —
RECONSIDERATION DENIED JANUARY 13, 2010.

*J. Hugh Gordon, for appellants.*
*Dennis, Corry, Porter & Smith, Zachary S. Shewmaker, Stephanie C. Patel, for appellee.*

---

[23] Id.; *Johnson*, supra at 345. We affirmed the grant of a directed verdict in the driver's favor in *Johnson*, id., and we affirmed the jury's verdict in the driver's favor in *Tucker*, supra.