**THIRD DIVISION
GOBEIL, J.,
COOMER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 12, 2019**

# In the Court of Appeals of Georgia

A18A1707, A18A1708. NASH v. REED; and vice versa.

HODGES, Judge.

In this personal injury case, Marshall Nash sued Daniel Reed for injuries he sustained when Reed struck him with a car while Nash was jogging. Reed moved for summary judgment on Nash's claims for negligence and attorney fees, and the trial court granted the motion on Nash's claim for attorney fees but denied it as to the negligence claims. In Case No. A18A1707, Nash appeals the trial court's ruling on his claim for attorney fees. In Case No. A18A1708, Reed cross-appeals the ruling on the negligence claims. We have consolidated these cases for decision. For the reasons below, we reverse summary judgment on Nash's claim for bad-faith attorney fees, affirm summary judgment on his attorney fees claim premised on stubborn litigiousness, and affirm the denial of summary judgment on his negligence claims.

"[T]o prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law . . . ." (Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). Trial court rulings on summary judgment "enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c)[1] have been met." Id. at 624 (1) (a). In making that determination, "we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) Id.

So viewed, the record shows that Nash was wearing headphones and listening to music while jogging on Moore's Mill Road near its intersection with Northside Drive. Reed was driving about 35 m.p.h. on Moore's Mill in the same direction. As he approached the intersection, Reed saw Nash near the middle of the street and slowed to about 25 m.p.h. Reed did not think that Nash saw him, and he admits that he did not know the direction in which Nash was going.

---

[1] OCGA § 9-11-56 (c) (summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

Reed crossed the intersection without honking or waiting for Nash to get out of the way. In an attempt to get around Nash, Reed drove across double-yellow lines into oncoming traffic, knowing that traffic laws generally prohibit him from doing so. As he was returning to his lane, Reed struck Nash, breaking his leg. Reed testified that he "made an educated decision on how to avoid [Nash]" and that he would "do it again." Minutes later, the police arrived. Nash told an officer that Reed ran a red light; Reed testified that he had a green light. Although an officer on the scene cited Nash for "Dart[ing] Into Traffic," the State dismissed the citation.

Nash sued Reed for negligence, negligence per se, and OCGA § 13-6-11 attorney fees. Reed answered the lawsuit and moved for summary judgment. Reed argues that he did not strike Nash; instead, he claims, Nash struck him. He also argues that Nash violated several traffic laws, eliminating any liability Reed may otherwise have had.

The trial court granted summary judgment to Reed on Nash's attorney fees claim but denied it on the remaining claims. Nash appeals the grant of summary judgment on the attorney fees claim, and Reed cross-appeals the denial of summary judgment on the remaining claims.

*Case No. A18A1707*

3

1. Nash first argues that the trial court erred by granting summary judgment on his claim under OCGA § 13-6-11 for bad-faith attorney fees. We agree.

Generally, a party may not recover litigation expenses as damages. See OCGA § 13-6-11. If, however, "the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith . . . , the jury may allow them." Id. "The intent of the law, as shown by the words, 'the jury may allow them,' is to leave the matter of expenses of litigation to the jury trying the case." (Citations omitted.) *Covington Square Assocs. v. Ingles Markets*, 287 Ga. 445, 446 (696 SE2d 649) (2010); see also *Forsyth County v. Martin*, 279 Ga. 215, 219 (2) (b) (610 SE2d 512) (2005) ("Questions concerning bad faith . . . are generally questions for the jury") (citation omitted). On summary judgment, "[e]ven slight evidence of bad faith can be enough to create an issue for the jury." (Citation omitted.) *City of Lilburn v. Astra Group, Inc.*, 286 Ga. App. 568, 571 (649 SE2d 813) (2007). That said, "if there is no evidence of bad faith . . . , a court should grant a defendant's motion for summary judgment on a claim for attorney fees." *Garrett v. Women's Health Care of Gwinnett*, 243 Ga. App. 53, 55 (1) (532 SE2d 164) (2000).

Bad faith under OCGA § 13-6-11 "must have arisen out of how the defendant acted in dealing with the plaintiff." (Citation omitted.) *City of Lilburn*, supra, 286 Ga.

4

App. at 571. It "pertains to the transaction . . . out of which the cause of action arose, not to the defendant's conduct after the cause of action arose." (Citation omitted.) Id.[2] "Indicative of whether a party acts in good or bad faith in a given transaction is his abiding by or failing to comply with a public law made for the benefit of the opposite party, or enacted for the protection of the latter's legal rights." (Citation and punctuation omitted.) *Windermere, Ltd.*, supra, 211 Ga. App. at 179 (2).

Nash highlights several facts to support his argument that Reed acted in bad faith. First, Reed saw Nash on the other side of the intersection and knew that Nash did not see him. Second, Nash was near the middle of the street, and Reed did not know where he was going. Third, Reed thought about honking to alert Nash but decided against it, and Reed admits that he could have stopped and allowed Nash to finish crossing the street but chose not to. And fourth, Reed crossed a double-yellow line in an attempt to get around Nash even though traffic laws generally prohibit him from doing so.

---

[2] Reed cites *DeKalb County v. McFarland*, 231 Ga. 649, 651 (1) (b) (203 SE2d 495) (1974), for the proposition that "*only* intentional torts 'invoke a species of bad faith' that entitles a plaintiff to recover her expenses of litigation." (Emphasis supplied.) To the contrary, neither that case nor any other authority in this area limits the recovery of bad faith attorney fees to intentional torts. See, e.g., *Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 179 (2) (438 SE2d 406) (1993) ("[T]he absence of an intentional tort is not fatal to [a] claim for OCGA § 13-6-11 bad faith attorney fees.").

Taken together, this evidence is sufficient to create a jury issue on the issue of bad faith. See *City of Lilburn*, supra, 286 Ga. App. at 571; see also *Young v. Kitchens*, 228 Ga. App. 870, 874 (3) (492 SE2d 898) (1997) ("It is the jury's function to draw an inference from the evidence when more than one inference can be drawn.") (citation omitted). Consequently, the trial court erred by granting Reed summary judgment on Nash's OCGA § 13-6-11 claim for bad-faith attorney fees.

2. Nash next argues that the trial court erred by finding a bona fide controversy, precluding an attorney fees claim under OCGA § 13-6-11 for stubborn litigiousness. We disagree.

Under OCGA § 13-6-11, the jury may award Nash attorney fees if he "specially pleaded and has made prayer therefor" and if Reed has been "stubbornly litigious." But the existence of a "bona fide controversy" between the parties precludes an award of attorney fees premised on stubborn litigiousness. *Horton v. Dennis*, 325 Ga. App. 212, 217 (750 SE2d 493) (2013); *Daniel v. Smith*, 266 Ga. App. 637, 638 (1) (597 SE2d 432) (2004). "Although whether a bona fide controversy exists is *normally* a question for the jury to decide, we have also repeatedly held that, if a bona fide controversy clearly exists between the parties, there is not 'any evidence' to support an award based on stubborn litigiousness . . . ." *Horton*, supra, 325 Ga. App. at 217.

6

The trial court did not err by finding that a bona fide controversy exists here. Among other things, Nash claims that Reed struck him while Reed claims that it was Nash who ran into his car. And both parties argue that one another violated traffic laws, causing the collision. These conflicting accounts create a bona fide controversy. Because "a bona fide controversy clearly exists between the parties, [Reed] is entitled to judgment as a matter of law on [Nash's] claim for attorney fees and expenses of litigation based on stubborn litigiousness . . . ." Id.[3] Hence, the trial court did not err by granting Reed summary judgment on Nash's OCGA § 13-6-11 claim for attorney fees premised on stubborn litigiousness.

*Case No. A18A1708*

3. Reed cross-appeals, arguing that the trial court erred by denying his motion for summary judgment on Nash's negligence and negligence per se claims. We disagree.

To prove negligence, a plaintiff must establish four elements: duty, breach of that duty, causation, and damages. *Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga.

---

[3] This does not affect our holding in Division 1. See *Windermere Ltd.*, supra, 211 Ga. App. at 179 (2) ("Where, as here, evidence of bad faith in the transaction is presented, the existence of a bona fide ground for contesting liability is not dispositive of the claim for OCGA § 13-6-11 damages.") (citation omitted).

840, 841 (1) (797 SE2d 87) (2017). "Negligence is not susceptible to summary adjudication except where the evidence is plain, palpable, and indisputable that the respondent cannot present any slight evidence on each essential element of the action in rebuttal to create a jury issue." (Citation omitted.) *Hite v. Anderson*, 284 Ga. App. 156, 159 (643 SE2d 550) (2007).

Under Georgia law, a statute may establish a duty, and violating that statute may result in a breach of the duty, constituting negligence per se. *Rockefeller v. Kaiser Foundation Health Plan of Ga.*, 251 Ga. App. 699, 702 (1) (554 SE2d 623) (2001). Two factors determine whether a statutory violation is negligence per se: "(1) whether the injured person falls within the class of persons [the statute] was intended to protect and (2) whether the harm complained of was the harm [the statute] was intended to guard against." (Citation omitted.) Id. The plaintiff must satisfy both factors. Id.

Of course, "negligence per se is not liability per se." (Citation and punctuation omitted.) *Hite*, supra, 284 Ga. App. at 158. Even if "negligence per se is shown, the plaintiff must still prove proximate cause and actual damage in order to recover, and it is generally a jury question as to whether or not such negligence proximately

8

caused the injury." (Citation and punctuation omitted.) Id.; see also *Rockefeller*, supra, 251 Ga. App. at 702–703 (1).

In a case such as this, in which the parties offer differing, if not contradictory, accounts as to whose conduct caused the collision, the evidence is neither plain nor indisputable, and resolution of the facts properly rests with the jury. See *Mayo v. Old Dominion Freight Line, Inc.*, 302 Ga. App. 19, 21 (689 SE2d 837) (2009) ("[Q]uestions of negligence, diligence, . . . and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases.") (citation and punctuation omitted). Thus, the trial court did not err by denying Reed summary judgment on Nash's negligence claim.

As for negligence per se, our Supreme Court has held that, under OCGA § 40-6-93, motorists "must exercise ordinary care to discover and avoid persons in the roadway." *Fountain v. Thompson*, 252 Ga. 256, 257 (312 SE2d 788) (1984); accord *Mayo*, supra, 302 Ga. App. at 22–23 (applying *Fountain*). Because that rule applies if the person is "lying prone in the middle of the street," *Mayo*, supra, 302 Ga. App. at 23, it necessarily follows that the "duty also inures to one standing in the middle of the street," id. at 22–23. What is more, the plain language of OCGA § 40-6-93 shows that it was designed to protect Nash and to prevent Reed from hitting him.

9

Even if Nash were negligent, "we cannot say as a matter of law that his negligence precludes . . . recovery, because a question of fact remains as to whether [Reed's] negligence was greater." Id. at 23. So the trial court did not err by denying Reed summary judgment on Nash's negligence per se claim.

At bottom, the "cardinal rule" on summary judgment is that "the court can neither resolve the facts nor reconcile the issues, but only look to ascertain that there is an issue." *Randy Ford, Inc. v. Martin*, 146 Ga. App. 335, 336 (2) (246 SE2d 389) (1978). In that vein, we conclude that the trial court erred by granting summary judgment on Nash's OCGA § 13-6-11 claim for bad-faith attorney fees. But it did not err by granting summary judgment on Nash's OCGA § 13-6-11 claim for fees premised on stubborn litigiousness. Nor did it err by denying Reed's motion for summary judgment on Nash's negligence claims.

*Judgment affirmed in Case No. A18A1708. Judgment affirmed in part and reversed in part in Case No. A18A1707. Gobeil and Coomer, JJ., concur*.

10