## A03A0255. GUZMAN v. THE STATE.
(586 SE2d 59)

ADAMS, Judge.

Gerrado Luis Guzman was convicted on two counts of homicide by vehicle in the first degree for causing the deaths of two boys. But Guzman was neither driving nor riding in the only car involved in the fatal accident. Rather, he was convicted based on the fact that he earlier gave beer and his car keys to the 14-year-old boy who was driving the car at the time of the accident. In this difficult case of first impression, we hold that because the evidence supports a finding that Guzman was a party to the underlying crime of driving under the influence of alcohol and that his actions played a substan-

tial part in causing the deaths, there was sufficient evidence to convict him of homicide by vehicle.

Construed in favor of the verdict, the facts show that on May 8, 2000, at about 10:00 p.m., Joey Hernandez was at home with his mother (who had gone to bed), his 12-year-old brother Robert, and other siblings, when Luis Guzman, a friend and a purported father figure, called and said he was coming over. Guzman arrived with four 12-ounce cans of beer, two of which he drank. He then left with Joey and Robert to get more beer and picked up Joey's 16-year-old friend Matthew Sartor along the way. Matthew asked Guzman to buy the boys some beer, and he agreed. Guzman bought four 40-ounce beers, and after they returned to the Hernandez home, Guzman passed out beer to the three boys. Other young people arrived, and at least two of them also drank some of the beer.

Although disputed, there was evidence that Guzman gave his keys to Joey. Some time later, another carload of young people arrived, and some of them saw Matthew driving Guzman's car with Joey along for the ride, and they saw Matthew run a stop sign. Joey also testified that Matthew was driving the car. But, Doug Sartor, Matthew's brother, testified that Joey was driving the car at this time. The driver of the second car, Dewayne Crawford, pulled in front of Matthew and stopped the car. Joey then drove Guzman's car back to the house. Joey went inside, but Matthew remained in the passenger seat. Joey came back outside with Guzman, got in the driver seat, and, after Joey's brother Robert jumped into the back seat of the car, drove off. Guzman was standing outside the home close by the car when Joey drove off and did not do or say anything to try to stop Joey.

Joey testified that while he was driving, he heard what he thought were gunshots, and Matthew said, "Go, go, go," after which Joey accelerated "real fast" and lost control of the car. A witness testified to hearing a similar sound. Joey also testified that Matthew asked to drive and hit Joey on the shoulder just before Joey lost control.

A neighbor testified that the car sped around for ten or fifteen minutes and that it was "running pretty fast and hitting speed bumps and bottoming out." The car then lost control and struck a tree, killing Robert Hernandez and Matthew Sartor. The car was going 61 mph when it left the road. Joey had a blood alcohol level of 0.03 grams about two hours after the accident. An expert testified that Joey's blood alcohol level would have been about 0.06 at the time of the accident and that, at that level, a person of Joey's age would be impaired. Joey does not remember how much beer he drank, but at trial he agreed that he was drunk at the time of the accident.

Guzman was convicted on two counts of homicide by vehicle in the first degree for the two deaths resulting from Joey's driving Guz-

man's car while he was under the influence of alcohol to the extent that he was less safe to drive. See OCGA §§ 40-6-391 (a) (1); 40-6-393. The jury also returned guilty verdicts on two counts of homicide by vehicle because Joey, a minor, drove with a blood alcohol concentration of 0.02 grams or more, see OCGA § 40-6-391 (k) (1), and two more counts of homicide by vehicle because Joey drove recklessly, see OCGA § 40-6-390 (a); but the court merged these four verdicts with the first two. Finally, Guzman was convicted on five counts of furnishing alcohol to a minor.

1. Guzman contends that the evidence was insufficient to support the verdict.

In OCGA § 40-6-393, the legislature codified the crimes of homicide by vehicle in the first and second degree. Subsection (a) provides that a person commits the crime in the first degree by causing a death, "without malice aforethought," "through the violation" of any one of five specific traffic offenses, including reckless driving and driving under the influence. This Court has recognized "that the vehicular homicide statute requires the State to establish a causal connection between the defendant's violation of [one of the five underlying offenses] and the victim's death." (Citations omitted.) *Miller v. State*, 236 Ga. App. 825, 828 (1) (513 SE2d 27) (1999). But see *Klaub v. State*, 255 Ga. App. 40, 44-46 (2) (564 SE2d 471) (2002). Accordingly, the State must show (1) that Guzman violated the underlying offense of driving under the influence and (2) that "through the violation," Guzman caused the deaths.

(a) Based on the plain language of OCGA § 40-6-391 (a) (1), Guzman cannot be *directly* convicted for driving under the influence of alcohol because he was not driving or in actual physical control of the car. But the State asserts that Guzman can be convicted as a party to the crime. See OCGA § 16-2-21. A person is a party to a crime if he or she, among other things, intentionally aids or abets in the commission of the crime. OCGA § 16-2-20 (b) (3). Aiding and abetting requires proof of a common criminal intent. *Jones v. State*, 250 Ga. 11, 13 (295 SE2d 71) (1982).

We first note that this Court has held that an individual may be a party to a violation of the traffic laws without driving. See *Bivins v. State*, 166 Ga. App. 580, 581 (2) (305 SE2d 29) (1983). In *Bivins*, a passenger was charged with fleeing or attempting to elude a police officer in violation of OCGA § 40-6-395 (a) (one of the five underlying crimes of first degree vehicular homicide) despite the wording of the statute that prohibits "any driver of a vehicle" from fleeing or eluding the police. The State was able to show that the passenger acted in concert with the driver to unlawfully escape by taking advantage of the high-speed chase to dispose of weapons used in an armed robbery. *Bivins*, 166 Ga. App. at 581 (2). These facts established that the pas-

senger and the driver had "a common design to act together for the accomplishment of an unlawful purpose." (Citation and punctuation omitted.) Id. Compare *Carter v. State*, 249 Ga. App. 354, 357 (5) (548 SE2d 102) (2001) (no evidence that passenger acted in concert with driver during high-speed chase). Accordingly, the passenger in *Bivins* could have been convicted of vehicular homicide had his actions during the high-speed chase caused a death.

We must therefore determine whether Guzman and Joey had a common design to act together for the accomplishment of driving under the influence in a less safe manner. "DUI is a crime of *general*, not specific, intent. . . . [T]he intent required is proved through proof of the commission of the act itself." (Citation and punctuation omitted; emphasis in original.) *Prine v. State*, 237 Ga. App. 679, 680 (2) (a) (515 SE2d 425) (1999). Accordingly, Joey need not have intended to drive under the influence of alcohol to the extent that he was less safe; the mere fact that he did shows sufficient intent. But whether Guzman had sufficient intent to be a party to the crime is a separate question.

Criminal intent "may be inferred from conduct before, during, and after the commission of a crime." (Citation omitted.) *Burks v. State*, 268 Ga. 504, 505 (491 SE2d 368) (1997). Here, there is evidence that Guzman gave Joey alcohol, gave him his keys, and stood by silently as Joey got behind the wheel. The jury could have reasonably concluded that Guzman and Joey had a common design to allow Joey to drive after drinking alcohol. Guzman clearly aided and abetted Joey in driving under the influence of alcohol, two of the three elements of DUI.[1]

The third element of DUI requires a finding that Joey was under the influence to the extent that it was less safe to drive. The law does not prohibit all driving following consumption of alcohol. See *Munda v. State*, 172 Ga. App. 857, 858 (1) (324 SE2d 799) (1984). A person may legally drive after having a small amount of alcohol so long as the alcohol does not cause him or her to be a less safe driver or exceed the legal blood alcohol limit. Id. But here, Joey could not legally drive or legally consume alcohol. And Guzman knew that, because of his age, Joey probably had little or no experience driving and little or no experience with alcohol. Based on the evidence, a reasonable juror could conclude that Guzman knew that Joey would drive in a less safe manner as a result of consuming beer.

---

[1] The crime of driving while under the influence to the extent that it is less safe to drive requires showing three elements: (1) driving, (2) under the influence of alcohol, (3) to the extent that it is less safe for the person to drive. OCGA § 40-6-391 (a) (1). The third element requires proof of impaired driving ability, but not an actual unsafe act. See *Kevinezz v. State*, 265 Ga. 78, 79 (454 SE2d 441) (1995); *Miller*, 236 Ga. App. at 828 (1).

It is true that "[p]resence at the scene of a crime, even when coupled with knowledge and approval, not amounting to encouragement, is not sufficient to show that defendant is a party." (Citations omitted.) *Smith v. State*, 188 Ga. App. 415, 416 (1) (373 SE2d 97) (1988). But under Georgia law, "[e]very person is presumed to intend the natural and probable consequences of his conduct, particularly if that conduct be unlawful and dangerous to the safety or lives of others." (Citation and punctuation omitted.) *Helton v. State*, 216 Ga. App. 748, 749 (455 SE2d 848) (1995). Construed in favor of the verdict, the evidence supports the conclusion that Guzman encouraged Joey to drink and drive when he gave the boy beer and his keys, knowing that Joey was about to drive. Accordingly, the evidence was sufficient to show that Guzman was a party to Joey's driving under the influence to the extent that it was less safe to drive.

(b) In order to prove vehicular homicide in this case, the State also had to show that Guzman caused the deaths, without malice aforethought, "through the violation" of the DUI statute. OCGA § 40-6-393 (a). "[T]he State must prove that the defendant's conduct was the 'legal' or 'proximate' cause, as well as the cause in fact, of the death." (Footnote omitted.) *Miller*, 236 Ga. App. at 828 (2).

> An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission. It is not sufficient to show that the defendant only contributed to the cause of the injury.

(Citations omitted.) *Pitts v. State*, 253 Ga. App. 373, 374-375 (1) (559 SE2d 106) (2002).

Here, the jury was authorized to conclude that Guzman's actions played a substantial part in bringing about the two deaths and that the deaths were a reasonably probable consequence of his actions. He gave alcohol and car keys to a minor who he must have known had little experience with either. He knew that Joey would soon be driving and that he had Matthew and Robert in the car. He was the only adult present who could have and should have prevented this tragic accident. Instead Guzman set in motion the fatal combination of an intoxicated minor driving after consuming alcohol resulting in two deaths. Thus, the jury was authorized to find that Guzman caused the deaths within the meaning of OCGA § 40-6-393 (a).

Guzman also contends that there were intervening causes of the accident. He argues that Joey's driving, Matthew's actions, or the

gunshot sound were the primary causes of the accident. But, Guzman could have reasonably anticipated or foreseen that an intoxicated minor might drive recklessly and that other minors who had been drinking might contribute to the general reckless nature of the outing. This is sufficient under Georgia law to find that the claimed intervening acts did not break the causal chain:

> [I]f the character of [an] intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.

(Citation and punctuation omitted.) *Ontario Sewing Machine Co. v. Smith*, 275 Ga. 683, 686 (2) (572 SE2d 533) (2002).

Accordingly, there was sufficient evidence for a reasonable juror to conclude that Guzman committed vehicular homicide.[2]

2. Guzman also contends that the trial court improperly allowed his pre-trial statement to be admitted into evidence. Guzman contends that he was not advised of his *Miranda* rights prior to the time his statement was made. But the evidence shows that the officer testified that he read Guzman his rights. Therefore, the trial court's findings were not clearly erroneous. See *Daniel v. State*, 268 Ga. 9, 10 (2) (485 SE2d 734) (1997).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JULY 10, 2003 —
RECONSIDERATION DENIED JULY 30, 2003.

*Charles D. Joyner, James R. Little*, for appellant.

---

[2] Several other courts have found that criminal liability for vehicular homicide may attach when the owner of a car, or other person in control, who is riding as a passenger in the car, permits another person to drive drunk or in a reckless manner. See, e.g., *Michel v. State*, 752 S2d 6, 10-11 (Fla. App. 2000), and cases cited therein. See also *State v. Whitaker*, 43 N.C. App. 600 (259 SE2d 316) (1979) (owner guilty of manslaughter for the deaths of two youths killed by intoxicated driver where owner was a passenger and permitted driver to operate vehicle). We see no reason why criminal liability should not extend to an owner or person in control of a vehicle who is not in the car when the accident occurs under the present circumstances, i.e., where someone gives alcohol and car keys to a minor with knowledge that the minor will soon drive.

*Daniel J. Porter, District Attorney, Phil Wiley, Tracie J. Hobbs, Assistant District Attorneys*, for appellee.