A05A1971. HURSTON v. THE STATE.
(629 SE2d 18)

SMITH, Presiding Judge.
Michael Wayne Hurston was indicted by a Carroll County grand jury on two counts of driving under the influence of alcohol, one "per se" count on the basis of his measured blood alcohol content and the other on the basis of his being "less safe" to drive, and two corresponding counts of homicide by vehicle in the first degree. At trial, the jury was unable to reach a verdict on either of the per se counts, but found Hurston guilty of homicide by vehicle and driving under the influence on the "less safe" counts, which were Counts 1 and 3. Hurston's amended motion for new trial was denied, and he appeals, asserting 12 enumerations of error. We find no harmful error and therefore affirm.

1. Hurston's first five enumerations of error allege juror misconduct in numerous respects. These allegations arose during and after the jury's deliberations. During deliberations, the jurors sent out a note asking if they could go to the scene of the collision. The trial court responded that "normally that's not allowed, but both sides have agreed that they wouldn't object to you going to the scene, if you still

---

want to go out to the scene, that can be arranged . . . do you still want to go out to the scene? Okay, the Sheriff's Department has vans. They can bring those up, and take y'all out there."

It does not appear, however, that the jurors were ever officially escorted to the scene. The trial court cautioned the jurors that "[n]o one can make any comments at all about anything concerning this case, either on the way to the scene, or at the scene, or on the way back from the scene. . . . So understanding that, do you still wish to see if the Sheriff's Department can get their vans over and take you out to the scene?" The jury foreman responded, "Can we talk?" and the trial court instructed the jury to "go back in," but no further discussion took place and the jury ultimately was dismissed for the day.

The next day, without any further discussion of a visit to the scene, the jury returned a verdict of guilty on Counts 1 and 3. Hurston's counsel asked that the jurors be polled not only on their verdict, but also "to inquire of the jurors whether any of them visited the accident scene last evening." The trial court polled the jurors; all of them testified that the verdict was their verdict, that it was still their verdict, and that it was freely and voluntarily given. Five jurors also responded that they had visited the accident scene at some time during the trial. Hurston's counsel then moved for a mistrial.[1] The trial court dismissed the jury, and deferred ruling on the motion until both defense counsel and the State could file briefs.

Later the same day, an additional hearing was held in which some, but not all, of the jurors were recalled for questioning. These jurors were questioned at length about the visits to the accident scene, but through some oversight, they were not sworn. The trial court concluded, however, that the votes of the ten jurors present were not influenced by their visits to the scene and denied the motion for a mistrial.

Six days later, the remaining two jurors were questioned, this time under oath. One of these two jurors testified that he had consulted a legal dictionary with regard to the definition of reasonable doubt and had discussed that definition with other jurors. He also testified that the definition was considered with respect to the handling of the blood sample by the State.

Approximately one month later, the State filed identical affidavits from all twelve jurors. In these affidavits, the jurors stated that the visits to the scene and the consultation of the law dictionary did not influence their vote on the verdict, that their free exercise of

---

[1] The prosecutor observed that "my gut feeling is [defense counsel's] probably right," but asked for time for legal research and a hearing.

thought, expression, or action was not affected, and that they followed the instructions of the court and not the law dictionary in voting on the verdict.

(a) Hurston asserts that the jurors' unauthorized visits to the scene and the juror's consultation of a legal dictionary require a new trial. Although jurors' affidavits are generally admissible to sustain but not impeach their verdict, OCGA § 17-9-41,

> [d]efendants have a constitutional right to confront and cross-examine witnesses against them, and this right is fundamental to a fair trial. That right is violated when a juror gathers and relays extra-judicial information that is so prejudicial that the verdict must be deemed inherently lacking in due process. Stated differently, a new trial will be granted if there is a reasonable possibility that the improper evidence collected by jurors contributed to the conviction.

(Citation, punctuation and footnotes omitted.) *Hammock v. State,* 277 Ga. 612, 613 (2) (592 SE2d 415) (2004).

In *Butler v. State,* 270 Ga. 441 (511 SE2d 180) (1999), the evidence showed that two jurors, when asked whether their visits to the crime scene contributed to the verdict, responded that it did not, and a third juror merely "raised the possibility" that it might have, although she was not sure. Id. at 445 (2). The Supreme Court concluded "that the alleged irregular conduct was not so prejudicial as to have rendered the trial fundamentally unfair and to have contributed to the conviction." (Citations and footnote omitted.) Id. Similarly, here all the jurors swore by affidavit that neither visits to the scene nor the use of the legal dictionary affected their verdict. While one juror declared at the hearing on the motion for new trial that the dictionary definition affected her verdict, this contradicted her earlier affidavit testimony that it did not, as well as her testimony later in the hearing that the definition did not "add anything or subtract from the charge . . . by the court." Moreover, her testimony agreed with the testimony of the juror concerned that the definition was used in connection with the per se counts of the indictment, as to which the jury failed to reach a verdict.

We are troubled by the trial court's oversight in failing to reach a firm conclusion regarding an official jury visit to the scene and in failing to caution the jurors upon dismissal for the evening that they should not visit the scene on their own. Such matters, once raised, should be resolved in a manner that leaves individual jurors in no doubt with regard to their duties. But Hurston failed to place the jurors under oath when adducing testimony regarding the unauthorized visits to the scene. This was not "extended polling of the jury" as

Hurston asserts, because the jury had already been dismissed by the trial court and dispersed, and not all the jurors were present. Compare *Rinker v. State*, 228 Ga. App. 767 (1) (492 SE2d 746) (1997). The unsworn statement of a juror cannot be used to impeach a verdict. *Mangrum v. State*, 155 Ga. App. 334, 336 (5) (270 SE2d 874) (1980). In view of the countervailing and unanimous affidavits of the jurors that the visits had no effect upon their verdict, we cannot say that the conduct complained of contributed to Hurston's conviction or that it was so prejudicial as to have rendered the trial fundamentally unfair.

(b) Hurston also asserts that unauthorized conversations occurred between an unidentified bailiff and some jurors. See *Turpin v. Todd*, 271 Ga. 386 (519 SE2d 678) (1999). But the only mention of such conduct occurred during the unsworn statements made by some jurors after the jury was dismissed, and this cannot be used to impeach their verdict. See Division 1 (a), above. For the same reason, Hurston's complaints that two of the jurors effectively repudiated their verdict during this unsworn questioning and that the trial court improperly limited questioning of the jurors are without merit.

2. Hurston also asserts that the trial court erred in denying his motion to suppress the results of the blood alcohol test and in allowing testimony regarding his request for an independent blood test. But, as noted above, the jury was unable to reach a verdict with respect to these counts of the indictment, rendering any such error harmless. *Ayers v. City of Atlanta*, 221 Ga. App. 381, 382 (2) (471 SE2d 240) (1996).

3. Hurston raises three enumerations of error with regard to similar transaction evidence.

(a) He first complains of the trial court's instruction because it failed to include "bent of mind" as one of the limited purposes for which the similar transaction evidence could be introduced. The trial court charged the jury both at the time of admission of the similar transaction evidence and again in its general charge. On both occasions, the trial court instructed the jury that the similar transaction evidence could be considered "for the limited purpose of showing, if it does, the identity of the perpetrator, the state of mind, the knowledge or intent of the defendant, in the crimes charged in the case now on trial." Hurston failed to object to the first instruction when it was given and did not request any additional instruction. He has therefore waived this enumeration of error. *Parrish v. State*, 237 Ga. App. 274, 281 (5) (514 SE2d 458) (1999).

Moreover, Hurston is mistaken in his contention that "bent of mind" and "course of conduct" are the "only proper purposes for which similar transaction evidence could be admitted." While the case cited by Hurston notes that similar transaction evidence may be "relevant to prove bent of mind or course of conduct" in a DUI prosecution,

*Kirkland v. State*, 206 Ga. App. 27, 28 (3) (424 SE2d 638) (1992), as the State points out, such evidence has also been admitted for the purpose of showing "the intent to drive while" under the influence of alcohol to the extent of impairment, *Tam v. State*, 232 Ga. App. 15 (1) (501 SE2d 51) (1998), state of mind, and knowledge.[2] *Walker v. State*, 208 Ga. App. 690, 692 (2) (431 SE2d 459) (1993). This enumeration of error is without merit.

(b) Hurston next complains that the trial court erred in allowing testimony and evidence regarding the similar transaction, because the State failed to lay a proper foundation to admit his blood test results, which also appeared on the uniform traffic citation. But Hurston

> pled guilty to that independent DUI, and the blood test result appears on the face of the accusation to which he acknowledged his guilt. A certified copy of the accusation and plea was entered into evidence. Pursuant to *Williams v. State*, 261 Ga. 640, 643 (2) (409 SE2d 649) (1991), the officer testified before the jury to the identity of [appellant] as the person he arrested on that charge. It was not error to admit the evidence.

*Roos v. State*, 208 Ga. App. 506, 507 (1) (a) (430 SE2d 870) (1993).

4. Before closing argument began, Hurston objected to a visual aid or poster prepared by the State which apparently included the words "he's done it before," on the basis that this was "a mischaracterization of a similar transaction." In his enumeration of error, Hurston contends that the State used the visual aid during closing argument as evidence of his bad character. But closing argument was not recorded, and Hurston did not raise any objection during or after the argument. The exhibits in the record do not include the visual aid in question.

> Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f). When this is not done, there is nothing for the appellate court to review. Therefore, due to the omission of closing arguments from the transcript, we cannot review this enumeration of error.

---

[2] We assume for the purposes of Hurston's argument, but do not decide, that a legally significant distinction may be drawn between the terms "bent of mind," "state of mind," and "intent."

(Citation, punctuation and footnote omitted.) *McFarlin v. State*, 259 Ga. App. 838, 840-841 (3) (578 SE2d 546) (2003). If the State in fact used this visual aid during closing to argue Hurston's bad character, Hurston was required to preserve that enumeration of error by objecting to the State's argument and placing his objections on the record. Because he failed to do so, this enumeration of error presents nothing for our review.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MARCH 7, 2006 —
RECONSIDERATION DENIED MARCH 27, 2006 —

*Allen M. Trapp, Jr.*, for appellant.
*Peter J. Skandalakis, District Attorney, Jeffery W. Hunt, Assistant District Attorney*, for appellee.