**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**August 30, 2012**

# In the Court of Appeals of Georgia

A12A0812. NELSON v. THE STATE.

MILLER, Judge.

Raquel Nelson was convicted of misdemeanor homicide by vehicle in the second degree (OCGA § 40-6-393 (c)) afer her four-year-old son, A. J., was tragically struck by an oncoming vehicle when he attempted to cross the street.[1] The trial court granted Nelson a new trial on its own motion pursuant to OCGA § 5-5-40 (h). Nelson filed a post-conviction plea in bar on the ground of double jeopardy, contending that the evidence was insufficient to sustain her conviction at the former trial. The trial

---

[1] The Cobb County jury also found Nelson guilty of a pedestrian crossing violation (OCGA § 40-6-92 (a)) and reckless conduct (OCGA § 16-5-60 (b)). During sentencing, however, the trial court merged the pedestrian crossing charge with the homicide by vehicle charge. The trial court also granted Nelson's post-conviction motion to quash the reckless conduct charge. Nelson was sentenced to 12 months of probation and 40 hours of community service, with a requirement that 20 hours of community service be performed in a pre-approved child safety program.

court denied Nelson's plea in bar, from which Nelson appeals.[2] For the reasons that follow, we must affirm.

> On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [Nelson] no longer enjoys a presumption of innocence. In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt [under the standard set forth in] *Jackson v. Virginia* [,443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)].

(Citation, punctuation, and footnotes omitted.) *Mattox v. State*, 305 Ga. App. 600 (699 SE2d 887) (2010). "The appellate standard of review of a grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the trial court's findings support its conclusion." (Citation punctuation, and footnote omitted.) Id. at 603 (2).

So viewed, the trial evidence showed that on April 10, 2010, Nelson had spent the day running errands with her eight-year old daughter, her two-year old daughter, and her four-year old son, A. J. At approximately 9:15 p.m. that evening, Nelson and

---

[2] This Court heard oral arguments in this case. Nelson's appellate counsel presented oral arguments to this Court; the State's prosecutors appeared in court, but elected not to participate in the oral argument proceeding.

her three young children were returning home, traveling on a public transportation bus.

The apartment complex where Nelson resided was located across a four-lane highway from the bus stop on Austell Road in Cobb County. The four-lane highway contained a raised center median that divided two southbound lanes, two northbound lanes, and a turn lane. The area of the roadway was straight. There was no crosswalk in the portion of the roadway between the bus stop and the apartment complex, but there were sidewalks leading to crosswalks at intersections located approximately 50 yards away from the bus stop. Nelson testified that on a prior occasion, she had walked to one of the intersection crosswalks, but she did not like walking the extra distance.

When Nelson and her children exited the bus, it was dark outside. Nelson was carrying three grocery bags, which she wrapped around her wrists so that she could hold her children's hands while guiding them off of the bus. Nelson testified that she had never previously crossed Austell Road with her children at night, and thus, she was feeling apprehensive. After exiting the bus, A. J. immediately began to walk into the street, prompting Nelson to pull him back and scold him.

Two other women had exited the bus with Nelson and her children, and they all began to cross the four-lane highway outside of the crosswalk. Nelson stated that before crossing the first two lanes of the roadway, she looked both ways to ensure that no vehicles were approaching. Nelson and her children successfully crossed the first two lanes and reached the raised median that divided the highway.

Thereafter, Nelson and her children began attempting to cross the last two lanes of the highway toward the apartment complex. An eyewitness who had been driving on the roadway testified that she observed Nelson and her children step off of the median and cross into the street "a very short distance" ahead. The eyewitness stated that Nelson and her children were crossing in a line, and Nelson was leading in front of A. J. Suddenly, a van drove down the roadway toward Nelson and her children. The driver of the van quickly swerved in efforts to avoid hitting Nelson and her children. The van, however, struck A. J., who was then standing in the dotted lines between the lanes of the roadway.

The driver of the van testified that he was driving down the roadway, and "all of the sudden, just out of nowhere, people just ran out in front of [him]." The driver further stated that the pedestrians "jumped out in front of [him]" and Nelson ran four to five feet in front of his van. The driver tried to stop and swerved to avoid hitting

4

the pedestrians, who were in the middle of the lane. The driver stated that he never saw A. J. and thought that he had only hit a basket and a post on the side of the road. The driver did not stop and left the scene of the accident.[3]

After A. J. was struck, Nelson was distraught and attempted to render aid to A. J. in the roadway. A. J. died as a result of blunt head trauma that he sustained during the accident.

Following the accident, officers assigned to the Cobb County Police Department's Selective Traffic Enforcement Program ("S.T.E.P.") conducted an investigation and performed an accident reconstruction. The investigating officers testified as to the conditions that existed on the roadway at the time of the accident, including the facts that there was no crosswalk at that particular location, the roadway

---

[3] The driver was subsequently arrested and charged with offenses related to the accident. The driver entered a guilty plea to leaving the scene of the accident, and was sentenced to serve a term of probation. The driver admitted that he had taken oxycodone pain medication and had consumed "two swallows" of beer earlier in the morning on the day of the accident. However, there was no evidence establishing that the medication remained in his system or that he was under the influence of drugs and alcohol at the time of the accident, which occurred later that night. The driver also testified that he had glaucoma in his left eye, which is the same side of the roadway from which the pedestrians were crossing. The investigating officer testified that he could not rule out that the driver's visual impairment may have contributed to the accident. After the investigation was completed, however, the officers ultimately concluded that Nelson's actions, and not the driver's actions, caused A. J.'s death due to her failure to safely enter the roadway.

was mostly dark, and the speed limit along the highway was 45 miles per hour. The investigating officer further testified that an individual's perception is greatly reduced at night, and that an individual's ability to recognize a threat and react accordingly are lengthened at night. It was undisputed that A. J. was in the lane of travel when he was hit by the vehicle. After the investigation was completed, the investigating officers concluded that A. J.'s death was caused by Nelson's act of leading A. J. into the roadway under unsafe conditions.

Nelson was charged, in pertinent part, with homicide by vehicle in the second degree under OCGA § 40-6-393 (c) and a pedestrian crossing violation under OCGA § 40-6-92 (a). Following the presentation of the evidence at trial, the jury found Nelson guilty of the charged offenses.

After sentencing Nelson to 12 months of probation and 40 hours of community service, the trial court offered Nelson the choice to either have a new trial or to proceed serving the sentence that had been imposed. The trial court subsequently entered an order granting a new trial. Thereafter, Nelson filed a double jeopardy plea in bar, contending that her retrial was barred since the evidence was insufficient to sustain her conviction. We disagree.

6

"[T]he Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient[.]" (Citations and punctuation omitted.) *Ricketts v. Williams*, 242 Ga. 303 (248 SE2d 673) (1978). Significantly, however, the trial court's exercise of its discretion in granting a new trial based upon its finding that the verdict is against the weight of the evidence differs from a judgment of acquittal holding that the evidence is legally insufficient. See id. at 304. "[T]he grant of a new trial by the trial court on the discretionary ground that the verdict is against the weight of the evidence is not a finding by the trial court that the evidence is legally insufficient so as to bar a second trial under the Double Jeopardy Clause of the Federal Constitution." (Punctuation omitted.) Id. at 304-305; see also *Ramsey v. State*, 258 Ga. 151 (366 SE2d 286) (1988) ("The granting of a new trial in the absence of a finding of not guilty or a finding of insufficiency of evidence does not ordinarily expose a defendant to double jeopardy or multiple prosecutions.") (citations omitted). Here, the trial court did not specify its ground for granting a new trial. Notably, however, the trial court subsequently denied Nelson's plea in bar and rejected her claim that the evidence was insufficient. In our review, we likewise conclude that the evidence presented at trial was sufficient to support the jury's guilty

7

verdict. Consequently, the trial court did not err in denying Nelson's double jeopardy plea in bar.

Under OCGA § 40-6-393 (c), "[a]ny person who causes the death of another person, without an intention to do so, by violating [provisions of the title pertaining to motor vehicles and traffic, including OCGA § 40-6-92,] commits the offense of homicide by vehicle in the second degree when such violation is the cause of said death[.]" (Punctuation omitted.) In turn, OCGA § 40-6-92 (a) provides that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway unless he has already, and under safe conditions, entered the roadway." (Punctuation omitted.)

As an initial matter, we note that the instant appeal presents a case of first impression in Georgia where a pedestrian or the parent of a child pedestrian has been criminally charged and convicted of second degree vehicular homicide after being struck by a vehicle while crossing the roadway in an unlawful manner. Nevertheless, nothing in the statutory language of OCGA § 40-6-393 (c) prohibits a vehicular

homicide conviction against a pedestrian or a non-driver in this regard.[4] Indeed,"this Court has held that an individual may be a party to a violation of the traffic laws without driving." (Citation and punctuation omitted.) *Guzman v. State*, 262 Ga. App. 564, 566 (1) (a), 568 (1) (b) (586 SE2d 59) (2003) (affirming a non-driver defendant's vehicular homicide conviction since the defendant's actions in supplying the minor with alcohol and then allowing the intoxicated minor to drive played a substantial part in causing the two deaths).

In this case, Nelson's vehicular homicide conviction under OCGA § 40-6-393 (c) was predicated upon her alleged pedestrian crossing violation under OCGA § 40-6-92 (a). She was also charged with the pedestrian crossing violation in a separate count of the accusation. Accordingly, we address both of these pertinent charges in turn below.

---

[4] Notably, OCGA § 40-6-393 (c) expressly excludes violations of OCGA § 40-6-163 (a) (governing the duty of a driver meeting or overtaking a school bus), OCGA § 40-6-270 (b) (governing the duty of a driver to stop at or return to the scene of an accident), OCGA § 40-6-390 (proscribing reckless driving), OCGA § 40-6-391 (proscribing DUI), and OCGA § 40-6-395 (a) (proscribing fleeing or attempting to elude a police officer), from the offenses upon which a vehicular homicide charge may be predicated. See OCGA § 40-6-393 (c). Significantly, however, the violation for a pedestrian crossing outside of a crosswalk under OCGA § 40-6-92 (a) has not been designated as one of the excluded violations. See id.

1. *Pedestrian Crossing Violation.* OCGA § 40-6-92 (a), as previously defined, mandates that a pedestrian crossing a roadway outside of a crosswalk must yield to vehicular traffic unless he has already made safe entry into the roadway.

Nelson initially argues that there was no evidence supporting this alleged violation since the meaning of the term "roadway" in the statute is ambiguous and the evidence did not establish when the entry into the roadway actually occurred. Nelson's claim is without merit. OCGA § 40-1-1 (53) defines the term "roadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder. In the event a highway includes two or more separate roadways, the term 'roadway' shall refer to any such roadway separately, but not to all such roadways collectively." Nelson correctly notes that the statutory definition excludes the berm or shoulder from being a part of the roadway, and that the four-lane highway in this case was separated by a raised median which would not be included in the roadway as defined. Nevertheless, there was no evidence that A. J. was standing on the berm, the shoulder, or the median at the time that he was hit. Rather, the undisputed evidence definitively established that A. J. had entered the roadway, had progressed into the middle of the lanes, and was in the path of oncoming vehicular travel at the time that he was struck.

Moreover, it was undisputed that there was no crosswalk in the area of the roadway where Nelson and her children had attempted to cross. While OCGA § 40-6-92 (a) does not absolutely prohibit a pedestrian from crossing the roadway outside of a crosswalk, the statute mandates that under those conditions, the pedestrian "shall yield the right of way to all vehicles upon the roadway *unless he has already, and under safe conditions, entered the roadway*." (Emphasis supplied.) Nelson contends that the State failed to present any evidence that she and her children had entered the roadway in an unsafe manner. Again, Nelson's contention is without merit.

Viewed in the light most favorable to the verdict, the trial evidence authorized a finding that Nelson had unsafely led her children into the path of oncoming vehicular traffic.[5] An eyewitness testified that as she was driving down the roadway, she observed Nelson lead her children off of the median and into the roadway "a very

---

[5] The witnesses described the distance between Nelson and the oncoming vehicular traffic by referring to locations in the courtroom. Although the judge and the jury were able to observe the witnesses' demonstrations describing those distances, the record on appeal does not contain any visual aids reflecting the witnesses demonstrations. Since the jury had the benefit of observing the witnesses' demonstrations, and we do not, we must defer to the jury's implicit findings that the roadway was not clear of approaching vehicles when Nelson and her children entered the roadway. Cf. *Hurston v. State*, 278 Ga. App. 472, 476-477 (4) (629 SE2d 18) (2006) (when the appellate record does not contain the visual aid presented at trial and the transcript does not fully disclose what transpired at trial, this Court's review is hampered).

11

short distance" ahead of the quickly approaching van. In addition, the driver of the van that struck A. J. testified that while he was driving down the roadway, Nelson and the pedestrians suddenly ran in front of his van. Moreover, the investigating officer testified that an individual's perception is greatly reduced at night time. This combined evidence authorized a finding that Nelson had led her children into the dark roadway as vehicles were approaching and under dangerous circumstances. Accordingly, the evidence was sufficient to establish that Nelson had violated OCGA § 40-6-92 (a) by crossing the roadway outside of a crosswalk and by failing to enter the roadway in a safe manner.

2. *Homicide by Vehicle in the Second Degree.* In order to prove vehicular homicide, the State is required to show a causal connection between the defendant's violation and the victim's death. See *Leachman v. State*, 286 Ga. App. 708, 710 (649 SE2d 886) (2007); *Williams v. State*, 165 Ga. App. 831, 832 (302 SE2d 736) (1983) (the conduct of the accused must be the cause of death in order to warrant a conviction for homicide by vehicle in either the first or second degree). In essence,

> the State must prove that the defendant's conduct was the 'legal' or 'proximate' cause, as well as the cause in fact, of the death. An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence in the case that the act or omission played a

12

substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission. It is not sufficient to show that the defendant only contributed to the cause of the injury.

(Citations and punctuation omitted.) *Guzman*, supra, 262 Ga. App. at 568 (1) (b).

Notwithstanding Nelson's challenge, the jury was authorized to conclude that Nelson's actions in crossing the roadway had caused A. J.'s death within the meaning of OCGA § 40-6-393 (b). As stated above, the State presented evidence reflecting that Nelson had led A. J. into the dark roadway while vehicular traffic was approaching. The evidence reflected that Nelson's action placed A. J. in the path of the quickly approaching van, which caused him to be struck and fatally injured. In light of the evidence, and the totality of the circumstances, the jury was authorized to find that Nelson's crossing violation under OCGA § 40-6-92 (a) played a substantial part in causing A. J.'s death. The evidence also permitted a finding that A. J.'s death after being struck by a vehicle was a reasonable probable consequence of the act of crossing the highway in the path of the oncoming vehicular traffic.

Nelson nevertheless argues that this Court should weigh the evidence and consider the driver's duty under OCGA § 40-6-93[6] to exercise due care to observe children and avoid pedestrians in the roadway. Nelson further argues that the evidence supported a theory of a mere accident, which would not authorize a conviction in light of OCGA § 16-2-2.[7] Nelson's arguments, however, are unavailing at this procedural posture. In evaluating the sufficiency of the evidence to support a conviction on appeal, this Court does not weigh the evidence, determine witness credibility, or resolve evidentiary conflicts. See *Mattox*, supra, 305 Ga. App. at 600. Rather, those duties rest within the province of the jury and "[i]t is the jury's function to draw an inference from the evidence when more than one inference can be drawn." (Citation and punctuation omitted.) *Young v. Kitchens*, 228 Ga. App. 870, 874 (3) (492 SE2d 898) (1997); *Tucker v. Love*, 200 Ga. App. 408, 409-410 (2) (408 SE2d 182) (1991) ("The obligation to weigh the evidence and to determine witness

_____

[6] OCGA § 40-6-93 pertinently provides that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, . . . and shall exercise proper precautions upon observing any child[.]" (Punctuation omitted.)

[7] OCGA § 16-2-2 provides that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." (Punctuation omitted.)

credibility rests with the jury. This court considers only the sufficiency of the evidence. On appeal an appellate court is bound to construe the evidence in support of the verdict and judgment, and if there is some evidence to support the verdict, we will uphold the judgment.") (citations and punctuation omitted).

The evidence in this case presented a jury question as to whether the collision was caused by the driver's negligence. See *Young*, supra, 228 Ga. App. at 872-874 (3) (ruling that a jury was required to resolve the questions as to whether the pedestrian fatality was caused by the pedestrian's failure to comply with the statutory provisions regarding walking on a roadway or the driver's failure to exercise due diligence to ensure that the lane was clear of pedestrian traffic). Since there was some evidence reflecting that Nelson and A. J. had darted into the roadway in front of the oncoming van when A. J. was struck, the jury was not required to find that the collision was caused by the driver's negligence. See *Etheredge v. Kersey*, 236 Ga. App. 243 (510 SE2d 544) (1998) (ruling that the driver was not negligent when the evidence revealed that the driver had the right of way when the pedestrian proceeded heedlessly from the safety of the center median without using the crosswalk and ran in front of the driver's vehicle); *Tucker*, supra, 200 Ga. App. at 409-410 (1), (2) (affirming jury verdict in favor of bus driver in a wrongful death action since there

15

was evidence that the pedestrian ran in front of the bus's path under circumstances in which the driver's visibility was impaired). Likewise, the evidence presented a question for the jury's resolution as to whether the collision was caused by mere misfortune or accident, rather than the alleged criminal negligence of Nelson. Cf. *Ogilvie v. State*, 313 Ga. App. 305, 308-310 (2) (a), (b) (721 SE2d 549) (2011) (ruling that the defendant in a vehicular homicide case was entitled to a jury charge for the jury's determination of the accident defense); *Morris v. State*, 210 Ga. App. 617, 618 (2) (436 SE2d 785) (1993) (same).

We recognize that the trial witnesses gave conflicting testimony in describing the events leading to the collision. Nelson testified in her defense, asserting that while she stood on the median and looked to ensure that there was no oncoming traffic before attempting to cross the second two lanes of the highway, she suddenly felt A. J. let go of her hand and saw him dart into the roadway. Nelson described that she yelled for A. J. to stop, which caused him to pause in the middle of the roadway. According to Nelson, A. J. was half-way across the roadway when she saw lights approaching, but she could not determine the distance of the vehicles. Nelson testified that as she ran into the roadway to help A. J. across the remaining lane, the van hit her, her youngest daughter, and A. J.

16

Another eyewitness testified that the accident occurred in "a matter of seconds." Consistent with Nelson's version of the events, the same eyewitness stated that prior to the accident, he observed A. J. dart into the roadway and Nelson immediately ran after him. However, the conflicts in the testimony as to whether Nelson had led her children into the roadway in the manner described by one eyewitness, or whether A. J. had darted into the roadway as described by Nelson and another eyewitness, presented a question of fact for the jury's resolution.[8]

A parent is required to comply with the standard of care which a reasonable person would exercise in the situation, and cannot consciously disregard a substantial and unjustifiable risk that her conduct would cause harm or endanger the safety of the

---

[8] In reaching our conclusion that the evidence was sufficient to authorize Nelson's convictions in this case, we express no opinion as to whether a parent may be held responsible for a child's impulsive, unanticipated act of darting into the path of oncoming traffic on a roadway. It is generally recognized that a parent's "[f]ailure to keep an unremitting watch and restrain[t] over [her] children . . . in the absence of knowledge of facts and circumstances requiring such action is not negligence." (Citation and punctuation omitted.) *Scarboro v. Lauk*, 133 Ga. App. 359, 361-362 (3) (210 SE2d 848) (1974). "In our society, strict control of children is today so rare that its absence is no indication of a lack of reasonable care. . . . Moreover, the mere fact that an injury occurred does not establish that the supervision was negligent." (Citations and punctuation omitted.) *McKelvey v. Plaisted*, 278 Ga. App. 531, 533 (1) (629 SE2d 464) (2006). Nevertheless, a parent is required to exercise reasonable care commensurate with the reasonably foreseeable risk of harm. See *Bohannon v. State*, 230 Ga. App. 829, 833-834 (1) (b) (498 SE2d 316) (1998).

child. See, e.g., *Bohannon v. State*, 230 Ga. App. 829, 834 (1) (b) (498 SE2d 316) (1998). Here, there were questions regarding whether Nelson had been criminally negligent and had unintentionally caused A. J.'s death by leading her children across a four-lane highway outside of a crosswalk and into the path of approaching traffic during the dark of night. To resolve this question, the jury was required to consider all of the circumstances surrounding the incident, including evidence that it occurred at night when visibility was limited; the posted speed limit on the highway was 45 miles per hour; Nelson had never crossed the highway with her children at night, which caused her to feel apprehensive and indicated her awareness of the potential danger; Nelson had to scold A. J. when they exited the bus because A. J. had attempted to walk into the roadway without her direction, which served as a further alert of the potential dangers involved in attempting to cross the highway with small children; there were sidewalks leading from the bus stop to crosswalks at intersections in the area, but Nelson chose not to walk the extra distance to those crosswalks; and Nelson and her children entered the roadway to cross when vehicles were approaching. After hearing the totality of the evidence during Nelson's first trial, the jury was convinced to resolve the questions against Nelson and to render a guilty verdict. This Court cannot usurp the jury's fact finding role in order to reach

18

a different result. "While we have the greatest sympathy for [Nelson's] plight, this Court must interpret the law and apply it with an even hand; the appellate process affords us no latitude to make adjustments for the ill-earned good fortune of the lucky or, as in this case, the heart-rending misfortune of the unlucky." (Citation and punctuation omitted.) *Bohannon*, supra, 230 Ga. App. at 835 (1) (b). Since there was evidence authorizing the jury's verdict, double jeopardy does not bar Nelson's retrial. Therefore, the trial court's denial of Nelson's plea in bar was proper.

*Judgment affirmed. Mikell, P. J., and Ray, J., concur.*