**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 22, 2018**

# In the Court of Appeals of Georgia

A17A2011. ESCAMILLA v. THE STATE.

MILLER, Presiding Judge.

Ruth Escamilla was convicted by a jury of exploitation of an elder person (OCGA § 30-5-8 (July 1, 2012)).[1] On appeal, she alleges that (1) the evidence was insufficient to sustain her conviction; and (2) the trial court erred by failing to (a) instruct the jury on her defense that the money the victim gave her was a gift, and (b) define the term "undue influence" for the jury. After a thorough review of the record, we affirm because the evidence was sufficient to support the conviction, Escamilla cannot show plain error in the trial court's failure to sua sponte instruct the jury on her defense, and Escamilla has waived any challenge to the trial court's instruction on undue influence.

---

[1] The jury acquitted Escamilla of theft by taking and forgery in the third degree.

Viewing the evidence in the light most favorable to the verdict,[2] Escamilla met the victim in 2006 when Escamilla worked as a teller at a Bank of America branch, where the victim had an account. Escamilla moved to another state, but when she returned to Georgia in 2010, she began working as a personal banker at a SunTrust Bank branch in a Publix grocery store. While working there, she became reacquainted with the victim, who also had an account at SunTrust.

As early as 2007, the victim's family members and friends began to notice changes in her demeanor, including repetitive behavior and memory loss. In March 2013, the victim was diagnosed as suffering from Alzheimer's disease. That same year, the victim noticed money missing from her account at SunTrust. The victim mentioned this to several people, as she was concerned that something was going on with her finances. The victim also stated that the "nice lady at the bank" was helping her. As a result, the victim decided to close her SunTrust account and consolidate the money into an account at Bank of America. Escamilla helped the victim withdraw the funds, totaling $304,749.20, and advised her to get a certified check in that amount made out to "CASH." Escamilla then took the victim to Bank of America to deposit the check into the victim's existing account. Once the money

_____

[2]*Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

was deposited, Escamilla helped the victim obtain a cashier's check made out to "CASH" for $304,000, which Escamilla deposited into her own account.[3] Escamilla subsequently bought a car, clothes, and dinners for her family, and took a vacation. She also transferred nearly $50,000 to a new savings account.

In May 2013, after noticing that money was missing from the victim's account, the victim's niece called the police. When questioned, Escamilla denied signing the victim's name on the checks and stealing from the victim, and she stated that the money was a gift. Escamilla, however, never reported the gift to the IRS, never told SunTrust that a client had given her such a gift, and she made a false entry in SunTrust's computer system when explaining why the victim closed her accounts.

The victim's niece, who held her power of attorney, testified that the signatures on the victim's prior checks did not match the signature on the $304,000 check. Additionally, the niece explained that the person who wrote the $304,000 check used an ampersand when writing the amount, which was something the victim never did. The victim's family members also testified that they had never known the victim to give financial gifts of more than several hundred dollars. The jury convicted

---

[3] There are photos of Escamilla and the victim at the bank, and photos of Escamilla depositing the funds into her own account. Additionally, Escamilla signed her own name on the back of the check she deposited.

3

Escamilla of exploitation of an elder person. She moved for a new trial, which the trial court denied, and this appeal followed.

1. Escamilla argues that the evidence was insufficient to sustain her conviction because the State failed to prove any acts of exploitation or that she acted with undue influence or deception. We disagree.

Under the version of the statute in effect at the time Escamilla committed the offense, "the abuse or exploitation of any disabled adult or elder person shall be unlawful." OCGA § 30-5-8 (a) (1) (A) (July 1, 2012). "Exploitation" was defined as "the illegal or improper use of a . . . elder person or that person's resources through undue influence, . . . for one's own or another's profit or advantage." OCGA § 30-5-3 (9) (2009). The statute does not define "undue influence," but the plain meaning of this phrase is "improper influence that deprives a person of freedom of choice or substitutes another's choice or desire for the person's own." See www.merriam-webster.com/legal/undue%20influence.

The evidence at trial showed that Escamilla assisted the victim in removing over $300,000 from the victim's account, she instructed the victim to write the check for "CASH," and she deposited the money into her own account. Although Escamilla testified that she intended to use the money to open an adult day care center, she in

4

fact used that money to buy a car, clothes, dinners, and a vacation. There was additional evidence that the victim suffered from dementia and was confused, that she had never before given such a large monetary gift, and that the signature on the victim's other checks did not match the signature on the $300,000 check. This evidence authorized the jury to conclude that Escamilla used deception or undue influence to obtain money from the victim for Escamilla's own personal gain. See *Marks v. State*, 280 Ga. 70, 72-73 (1) (a) (623 SE2d 504) (2005).

Moreover, Escamilla testified in her own defense, and it is the jury's role to evaluate the credibility of witnesses. "This Court does not weigh the evidence, determine witness credibility, or resolve evidentiary conflicts. Rather, those duties rest within the province of the jury and it is the jury's function to draw an inference from the evidence when more than one inference can be drawn." (Citations and punctuation omitted.) *Nelson v. State*, 317 Ga. App. 527, 534 (2) (731 SE2d 770) (2012). The jury weighed the evidence when it acquitted Escamilla of theft and forgery and convicted her of exploitation of an elderly person, and we will not disturb that decision where, as here, there is evidence to support it.

2. Escamilla argues that the trial court committed reversible error when it failed to instruct the jury on her sole defense that the money was a gift. We disagree.

5

Generally, "[t]he trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge." *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). Nevertheless, because Escamilla did not request a jury instruction on her defense either orally or in writing, we review this argument for plain error. *White v. State*, 291 Ga. 7, 8-9 (2) (727 SE2d 109) (2012) (applying plain error review to omission of an unrequested instruction on defendant's sole defense). Under plain error review, we will reverse a conviction only if all four prongs of the plain error test are met: "the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings." (Citation omitted.) Id.

Pretermitting whether alleging that the money was a gift is a defense to a charge for exploitation of an elder person, Escamilla cannot meet her burden under the plain error test.[4]

---

[4] Escamilla recognizes that there is no criminal jury instruction for the defense of gift. She argues, however, that the trial court could have looked to the civil jury instruction. In light of our conclusion that there was no error, we need not reach the question of what an appropriate instruction would have been.

Here, the trial court instructed the jury that the state had the burden of proof and was required to establish Escamilla's guilt beyond a reasonable doubt, and that to be convicted Escamilla must have acted with the requisite specific intent to exploit the victim. Thus, the jury instructions adequately covered the elements of the charge and were not erroneous. Moreover, in her own testimony, Escamilla claimed that the victim had given the money as a gift,[5] and in finding Escamilla guilty, the jury necessarily rejected Escamilla's testimony. Thus, Escamilla has not shown that the outcome of her trial would have been different had the jury been instructed on her defense. See *Hall v. State*, 258 Ga. App. 156, 157 (1) - (2) (573 SE2d 415) (2002). Accordingly, Escamilla cannot meet her burden of showing plain error, and this enumeration of error has no merit.

3. Escamilla next argues that the trial court erred by not instructing the jury on the definition of "undue influence." We discern no error.

During deliberations, the jury asked whether there was a legal definition of "undue influence." After discussing the issue with both the prosecutor and defense

---

[5] Closing arguments were not transcribed. Nevertheless, there is no dispute that Escamilla's defense, in her own testimony, was that the victim gave her the money as a gift.

counsel, the trial court advised the jury that it must rely on its own understanding of the plain meaning of those words. Importantly, Escamilla agreed to this response.

Escamilla has waived her challenge to the trial court's response by failing to object to – and instead affirmatively agreeing to – the trial court's answer. *Hill v. State*, 269 Ga. App. 459, 460-461 (1) (604 SE2d 300) (2004). Thus, this enumeration presents nothing for us to review.[6]

Accordingly, for the foregoing reasons, we affirm the denial of Escamilla's motion for new trial.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*

---

[6] We note that there is an exception to this waiver rule. See *Hill*, supra, 269 Ga. App. at 461 (1) ("the only exception to the waiver rule is when a trial court commits a substantial error in the charge that is harmful as a matter of law. . . . [h]owever, [the defendant] must show that the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether [she] was deprived, to some extent, of a fair trial. No issue is presented for appellate consideration unless a gross miscarriage of justice attributable to the jury charge is about to result.") (citations omitted). Escamilla has not argued, much less shown, that this exception applies.