**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 1, 2012**

# In the Court of Appeals of Georgia

A12A1277. CRAWFORD v. THE STATE.

BARNES, Presiding Judge.

Based on allegations that he threatened to kill his ex-girlfriend and knowingly set fire to a residence and vehicle, Anthony Dwight Crawford was indicted on charges of making terroristic threats, arson in the first degree, and arson in the second degree. A Newton County jury subsequently found him guilty of the charged offenses, and he filed a motion for new trial that was denied. On appeal, Crawford challenges the sufficiency of the evidence and contends that his trial counsel rendered ineffective assistance. For the reasons discussed below, we affirm.

Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the verdict. *Vadde v. State*, 296 Ga. App. 405 (674 SE2d 323) (2009). So viewed, the evidence showed that the

victim had an "[o]ff and on" romantic relationship with Crawford from 2005 until she ended the relationship with him in February 2010. During their relationship, Crawford and the victim lived together with her three children at the victim's home in Newton County. When the victim ended the relationship, Crawford moved out of her home and went to live with his brother in Auburn, Alabama.

Crawford became "upset [and] very angry" over the breakup and was "very persistent" in his efforts to reconcile with the victim. He continued to call the victim "[d]aily, multiple times a day." Crawford often became angry when speaking with the victim, including telling her that he had no reason to live and stating that she should "get ready to die as well."

By April 2010, the victim had become involved in a relationship with someone else, and she told Crawford that she had a new boyfriend. Crawford became angry and screamed at her in a face-to-face confrontation in front of her children. In an effort to end the unwanted contact, the victim asked Crawford to stop calling her.

During the early morning hours of April 15, 2010, the victim and her new boyfriend were in bed together in her home in Newton County. The bedroom window was open because it was nice outside that night. They awoke upon hearing something strike the back side of the house under the bedroom window. The victim's boyfriend

2

looked out the open window and saw Crawford running from the back of the house and get into a car that drove from the scene.[1] The victim got out of bed, checked on her children, and went downstairs. She heard someone knocking on the front door, and she opened it to find her neighbor telling her that her van was on fire.[2] The van was in the driveway, about six feet from the home.

Seeing the front interior of the van in flames, the victim and her boyfriend gathered her three children and fled from the home. The victim dialed 911, and the fire department and police arrived at the scene.

The fire destroyed the van. The victim's home also caught on fire, resulting in significant damage to the front portion near where the victim's ten-year-old son had been sleeping. Because of the fire, the victim's home became unliveable and required several months of repairs.

Approximately one hour after the fire, Crawford began calling the victim on her cell phone. It was unusual for him to call her in the middle of the night, and the phone number that Crawford was calling from had an Atlanta area code, even though

---

[1] Although the victim's boyfriend had never met Crawford, he had seen photographs of him.

[2] The victim drove the van, but it was owned by her mother.

he normally called her from a number with an Alabama area code. Crawford called the victim more than 10 times during the early morning hours after the fire. The victim was able to record some of the calls on her cell phone. At times during the calls, Crawford claimed that he was in Alabama, while at other times he claimed to be in Georgia. In one of the calls, Crawford told the victim, "I'm not gonna rest till it's over with," and "You done played with my heart. I'm ready to die tonight. I think you need to be ready too." Later during the call, Crawford said, "You got what you deserved," "[B]elieve me it's not over yet," and "When I die, you die with me."

The victim made arrangements for her sister to drive her three children to a hotel to stay the rest of the night, and the deputy chief with the Newton County Fire Department agreed to drive the victim and her boyfriend to the hotel. On the way to the hotel, Crawford called the victim again on her cell phone, and she activated the speaker on her phone so that the deputy fire chief and her boyfriend could overhear the conversation. During the call, Crawford, who seemed very agitated, told the victim that he had come to her house that night, had seen the window open from the backyard, had heard music from the bedroom, and had known that the victim and her boyfriend were having sex. Crawford's description of what he had seen and heard leading up to the fire was consistent with the victim's recollection of that night.

4

Crawford admitted that he set the van on fire, and he told the victim that if he had possessed a key to the house, he would have come inside and killed her.

Early the same morning, an officer with the City of Auburn Police Department attempted to locate Crawford at his residence in Auburn. Crawford's brother informed the officer that Crawford had gone to Georgia.

Subsequent investigation revealed a large rock beneath the victim's bedroom window and a plastic jug containing a heavy petroleum distillate similar to diesel fuel near the air conditioner unit in the rear of the house. Neither the rock nor the jug had been there before. There also was a hole in the vinyl siding beneath the victim's bedroom window where something had struck it. Before the fire, there were no mechanical or other problems with the van, which was "in good working" condition, except that the driver's side window would not stay up.

Crawford was indicted for making terroristic threats, first degree arson for the burning of the victim's home, and second degree arson for the burning of the van used by the victim and owned by her mother. At trial, the victim testified to the events as set out above, and the State also presented the testimony of the victim's boyfriend, her mother, the deputy fire chief, and Crawford's brother, among other witnesses. The State also introduced into evidence photographs of the damage to the van and home,

as well as audio recordings of several of the victim's cell phone calls with Crawford. The jury was provided with transcripts of the calls to assist them in listing to the recordings. Crawford elected not to testify and chose not to present any witnesses on his behalf.

After hearing all of the testimony, viewing the photographs, and hearing the audio recordings, the jury found Crawford guilty of the charged offenses. Crawford moved for a new trial, asserting the general grounds and contending that his trial counsel was ineffective. After conducting an evidentiary hearing in which Crawford's trial counsel testified, the trial court denied the motion in a detailed order. This appeal followed.

1. Crawford challenges the sufficiency of the evidence with respect to his convictions on all three counts of the indictment.

> In reviewing the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979), we ask whether the evidence, when viewed in the light most favorable to the verdict, authorized a rational jury to have found the essential elements of the charged offense beyond a reasonable doubt. We do not weigh the evidence or determine witness credibility, but only determine whether the evidence was sufficient under the *Jackson* standard.

(Citations omitted.) *Smoot v. State*, __ Ga. App. __, __ (5) (Case No. A12A0627, decided June 5, 2012).

(a) Crawford first contends that there was insufficient evidence to convict him of making a terroristic threat because the only competent evidence of the threat was the victim's uncorroborated testimony. We disagree.

"A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence with the purpose of terrorizing another." (Citation and punctuation omitted.) *Maskivish v. State*, 276 Ga. App. 701, 703 (2) (624 SE2d 160) (2005). See OCGA § 16-11-37 (a). "The crime of making terroristic threats focuses solely on the conduct of the accused and is complete when the threat is communicated to the victim with the intent to terrorize." (Citation and punctuation omitted.) *Clement v. State*, 309 Ga. App. 376, 379 (1) (710 SE2d 590) (2011). The indictment alleged that Crawford committed the offense of making a terroristic threat in that on or about April 15, 2010, he threatened to commit murder with the purpose of terrorizing the victim.

At trial, the State introduced into evidence and played for the jury, without objection, recorded phone conversations between Crawford and the victim. The victim testified that the recordings were a true and accurate representation of the

7

conversations she had with Crawford on the morning of April 15, 2010 after the fire had been set. As previously noted, in one of the recorded conversations, Crawford told the victim, "I'm not gonna rest till it's over with," and "You done played with my heart. I'm ready to die tonight. I think you need to be ready too." He also told the victim that "You got what you deserved," "[B]elieve me it's not over yet," and "When I die, you die with me."

The recorded phone conversation, properly authenticated by the victim and introduced without objection, was sufficient to authorize Crawford's conviction for making a terroristic threat as alleged in the indictment. See *Rhames v. State*, 193 Ga. App. 199, 200 (2) (387 SE2d 353) (1989) (telephone calls recorded on victim's answering machine that contained defendant's threats to sexually assault and kill the victim was sufficient to authorize terroristic threats convictions).

It is true, as Crawford maintains, that a terroristic threat conviction cannot be predicated solely on the uncorroborated testimony of the victim. See OCGA § 16-11-37 (a) ("No person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is communicated."). But, in the instant case, Crawford's threat was established through the recorded phone conversation introduced into evidence and played for the jury. Hence, corroboration was not

8

required. See *Worthington v. State*, 257 Ga. App. 10, 11 (570 SE2d 85) (2002) (noting that corroboration is required only if the State relies solely upon the testimony of the party to whom the threat was communicated).[3] Cf. *Warnock v. State*, 195 Ga. App. 537, 540 (4) (394 SE2d 382) (1990) ("Corroboration of the younger daughter's testimony [regarding the threat she overheard] was not required because she was not the person to whom the threat was communicated.").

In any event, even if corroboration of the threat had been required, a defendant's "conduct leading up to the terrorist threat may constitute corroboration." *Maskivish*, 276 Ga. App. at 703 (2). See *Hobby v. State*, 298 Ga. App. 52, 54 (1) (679 SE2d 72) (2009) ("[C]orroborating circumstances may include [a] defendant's aggressive and hostile conduct leading up to and during the threat."). Crawford's conduct in throwing a rock at the victim's bedroom window and setting her van on

---

[3] In arguing that there was insufficient evidence to prove the making of a terroristic threat, Crawford focuses on the testimony at trial about his unrecorded conversation with the victim on speaker phone while she was riding in the car to the hotel with the deputy fire chief and her boyfriend. Yet, the language of the indictment was broad enough to authorize a conviction for terroristic threats predicated on the recorded phone conversation between Crawford and the victim earlier that same night. Moreover, opening statements and closing arguments were not transcribed, and there is nothing in the record to suggest that the State intended to restrict the terroristic threat count of the indictment to the unrecorded phone conversation.

fire sufficiently corroborated his threat to kill the victim, had it been necessary for the State to show corroboration.

(b) Crawford next asserts that there was insufficient evidence to support his conviction for arson in the second degree because there was no competent expert testimony regarding the cause and origin of the fire that destroyed the van. We do not agree.

"A person commits second degree arson of a vehicle when, by means of a fire or explosive, he or she knowingly damages any vehicle of another without his or her consent." *Senior v. State*, 273 Ga. App. 383, 385 (2) (615 SE2d 220) (2005). See OCGA § 16-7-61 (a). The indictment alleged that Crawford committed arson in the second degree on or about April 15, 2010 by knowingly causing damage, by means of fire, to the vehicle owned by the victims' mother.

The victim testified that she awoke to find the interior of the parked van on fire in the middle of the night, despite the van having no prior significant mechanical problems, and that she did not give anyone permission to burn the van. The victim's mother likewise testified that she did not give anyone permission to burn the van.

Significantly, the victim further testified that, while talking on speaker phone on the way to the hotel after the fire, Crawford confessed to her that he had set fire to the van.

> It is axiomatic that a confession alone, uncorroborated by any other evidence, does not justify a conviction. See OCGA § 24-3-53. However, a free and voluntary confession of guilt by the accused is direct evidence of the highest character and is sufficient to authorize a conviction when corroborated by proof of the corpus delicti. The evidence corroborating a confession, however, need not definitely connect the defendant to the crime; corroboration in any material particular satisfies the legal requirement.

(Citations and punctuation omitted.) *Martinez v. State*, 314 Ga. App. 551, 553 (1) (724 SE2d 851) (2012). See *Robinson v. State*, 276 Ga. App. 502, 503 (1) (623 SE2d 711) (2005) (defendant's confession to arson in the second degree "corroborated by additional evidence that gasoline had been poured inside the stolen car, that a gas can was left in the vehicle and that the car had been set on fire").

Crawford's confession to the arson was corroborated by the testimony of the victim's boyfriend that he saw Crawford fleeing from the backyard of the victim's home immediately before he and the victim became aware that the van was ablaze. Crawford's confession was further corroborated by witness testimony that a plastic

11

jug containing a heavy petroleum distillate similar to diesel fuel was found outside the victim's home after the fire. In light of this testimony, Crawford's confession was sufficiently corroborated to support his conviction for arson in the second degree, and, therefore, there was no need for the State to introduce expert testimony as to the cause and origin of the fire to sustain the conviction.

(c) Crawford also argues that there was insufficient evidence to convict him of arson in the first degree because there was no evidence that he knowingly set the victim's house on fire. We are unpersuaded.

Pursuant to OCGA § 16-7-60 (a) (1), "[a] person commits the offense of arson in the first degree when, by means of fire or explosive, he or she knowingly damages . . . [a]ny dwelling house of another without his or her consent[.]" To prove arson in the first degree under OCGA § 16-7-60 (a) (1), there must be evidence of three fundamental facts: "First, a burning [of a dwelling house of another without consent]; second, that a criminal agency was the cause of the burning; and, third, that the defendant was the criminal agency." (Citation and punctuation omitted.) *Collins v. State*, 202 Ga. App. 291, 295-296 (1) (414 SE2d 297) (1991). The indictment alleged that Crawford committed arson in the first degree in that on or about April 15, 2010,

12

he knowingly damaged, by means of fire, the dwelling house of the victim without her consent.

Here, there was testimony that Crawford confessed to setting fire to the van, which was parked in the driveway only six feet from the victim's home, that the house also caught on fire, and that the victim did not consent to the burning of the house. There also was evidence that in the months after the victim broke up with Crawford and up to the time of the fire, Crawford had persistently refused to accept that their relationship was over, had become extremely upset upon learning that the victim had a new boyfriend, had continued to harass the victim with multiple phone calls on a daily basis, and had threatened to kill the victim and himself. Furthermore, the victim testified that during her conversation with Crawford on speaker phone after the fire, he told her that he would have come inside and killed her, if he had possessed a key to her house.

Contrary to Crawford's assertion, this combined evidence was sufficient to authorize a rationale jury to find that he knowingly set the victim's house on fire. Guilty knowledge can be inferred from the circumstances, see *Cobb v. State*, 125 Ga. App. 556 (1) (188 SE2d 260) (1972), including from the conduct of the defendant before, during, and after the crime, as well as from the defendant's words, demeanor,

13

and motive. See *Bishop v. State*, 266 Ga. App. 129, 132 (2) (596 SE2d 674) (2004); *Guzman v. State*, 262 Ga. App. 564, 567 (1) (a) (586 SE2d 59) (2003). Moreover, the trier of fact may infer that a person of sound mind and discretion intends the natural and probable consequences of his conduct, "particularly if that conduct be unlawful and dangerous to the safety or lives of others." (Citation and punctuation omitted.) *Guzman*, 262 Ga. App. at 568 (1) (a). See *Bishop*, 266 Ga. App. at 132 (2). In light of the spatial proximity of the van to the house, the threats Crawford had made to the victim, and his admission that he would have killed the victim if he had been able to do so, the jury was authorized to find that Crawford acted with guilty knowledge and intended for the victim's house to also catch on fire when he set her van on fire. Cf. *Plemons v. State*, 194 Ga. App. 554, 555-556 (2) (a) (390 SE2d 916) (1990) (jury entitled to find that by setting fire to clothing inside house and leaving it there, defendant also intended for the house to catch on fire).

Crawford also contends that the State failed to establish the cause of the house fire because there was no competent expert testimony establishing that the heat from the van fire caused the fire to spread to the victim's home. Even absent expert testimony, however, the jury was free to conclude that the house fire was a natural and probable consequence of setting the van on fire a mere six feet from the house.

14

Jurors in their common experience would be able to reach that conclusion, which did not require specialized knowledge or skill, and which was not beyond the ken of the average juror. See, e. g., *Turner v. State*, 246 Ga. App. 49, 55 (5) (a) (539 SE2d 553) (2000) ("The determination that a bomb is a destructive device is not beyond the ken of the jury.").

Lastly, we note that in challenging the sufficiency of the evidence, Crawford relies upon *Altman v. State*, 156 Ga. App. 185, 186 (1) (273 SE2d 923) (1980), for the proposition that he could not be separately convicted for arson relating to the victim's home because only one incendiary act was committed in this case, namely, the setting of the van on fire. *Altman* should not be construed so broadly. That case addressed whether the defendant's one incendiary act of setting fire to a structure that then spread to another structure could result in two convictions under the *same arson statute*. See id. See also *Stinski v. State*, 286 Ga. 839, 841 (1) (691 SE2d 854) (2010); *O'Kelley v. State*, 284 Ga. 758, 760-761 (1) (670 SE2d 388) (2008). Because the present case involves convictions under two separate and distinct arson statutes, *Altman* is inapposite.

Instead, where two different statutory provisions are involved, "the test to be applied to determine whether there are two offenses or only one, is whether each

provision requires proof of a fact which the other does not," i.e., the "required evidence" test. (Punctuation and footnote omitted.) *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006). See *Smith v. State*, 290 Ga. 768, 772-773 (3) & n.4 (723 SE2d 915) (2012). The first-degree and second-degree arson statutes at issue here each require proof of fire damage to a category of property that the other does not. Compare OCGA § 16-7-60 (a) (1) (applying to "[a]ny dwelling house of another . . . or in which another has a security interest, including but not limited to a mortgage, a lien, or a conveyance to secure debt . . . whether it is occupied, unoccupied, or vacant"), to OCGA § 16-7-61 (a) (applying "to any building, vehicle, railroad car, watercraft, aircraft, or other structure not included or described in Code Section 16-7-60"). Therefore, Crawford's separate convictions for arson in the first and second degree did not merge under the "required evidence" test. See *Drinkard*, 281 Ga. at 215. It follows that, unlike the defendant in *Altman*, Crawford could be convicted of more than one arson-related offense.

(d) For the combined reasons set forth in Divisions (1) (a) - (c), we conclude that a rational trier of fact was entitled to find Crawford guilty beyond a reasonable doubt of terroristic threats and arson in the first and second degrees. *Jackson*, 443

16

U.S. 307. The evidence thus was sufficient to support his convictions, and the trial court committed no error in denying his motion for new trial on the general grounds.

2. At trial, the deputy fire chief and the victim's boyfriend testified about the cell phone conversation between Crawford and the victim that they overheard on speaker phone on the way to the hotel after the fire. According to Crawford, his trial counsel was ineffective for failing to object to their testimony in which they (a) described what was said by the caller during the phone call and (b) referred to Crawford as the caller, given that neither witness had personal knowledge of Crawford's voice.

To substantiate a claim of ineffective assistance of counsel under the test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), "[Crawford] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance." *Johnson v. State*, 281 Ga. 770, 771 (2) (642 SE2d 827) (2007). If Crawford is unable to establish one of the prongs of the *Strickland* test, he cannot succeed on his claim of ineffective assistance, and we need not examine the other prong. Id. at 771-772 (2).

17

(a) In claiming ineffective assistance, Crawford maintains that neither the deputy fire chief nor the victim's boyfriend were entitled to testify about what the caller said during the cell phone conversation which they overheard on the way to the hotel. As previously noted, during that phone conversation, the caller (identified by the victim as Crawford), made several incriminating statements, including his admission that he set the van on fire and that he would have killed the victim if he had possessed a key to her house. We conclude that while the two witnesses did not have personal knowledge of Crawford's voice, they nevertheless were entitled to testify about what was said by the caller during the phone call that they overheard, given that the victim was able to identify Crawford as the caller.

> When the contents of a telephone conversation are sought to be used against a particular person, the rule governing admissibility requires that (a) the other party to the conversation be identified by competent evidence when identity is relevant; and (b) the contents of the phone conversation be admissible (e.g., qualify under some exception to the hearsay rule before admission).

(Citation and punctuation omitted.) *Jackson v. State*, 256 Ga. 536, 537 (2) (350 SE2d 428) (1986). See *Cannady v. Lamb*, 146 Ga. App. 850 (1) (247 SE2d 500) (1978).

18

The issue is whether prong (a) of the test for admissibility was met in this case,[4] and we conclude that it was met through the testimony of the victim.

Before the testimony of the deputy fire chief and the victims' boyfriend, the jury heard the testimony of the victim. She testified that she had been involved in a romantic relationship with Crawford for over four years, and thus obviously knew the sound of his voice. She identified Crawford as the caller in each telephone conversation she had with him after the fire, including the conversation on speaker phone that she had with him while riding to the hotel with the deputy fire chief and her boyfriend. After the victim testified to the contents of the phone conversation that occurred on speaker phone and identified Crawford as the caller, the deputy fire chief and the victim's boyfriend testified about what they had similarly overheard on the way to the hotel.

Under these circumstances, the testimony of the deputy fire chief and the victim's boyfriend about what the caller said during the phone conversation that they

---

[4] Prong (b) of the test for admitting a telephone conversation clearly was met because Crawford's statements to the victim during the conversation were admissible as voluntary, incriminating admissions. See *Escobar v. State*, 296 Ga. App. 898, 902 (3) (676 SE2d 291) (2009). See also OCGA § 24-3-34; *Teal v. State*, 282 Ga. 319, 327 (3) (647 SE2d 15) (2007). ("A defendant's incriminating statement is admissible when it constitutes an admission against the defendant's penal interest because [it] is the admission of a party-opponent.") (citations and punctuation omitted).

19

overheard was admissible. The identity of the caller, Crawford, was established through the competent testimony of the victim. See *Cannady*, 146 Ga. App. at 850 (1) (identity of speaker can be established through "direct testimony of voice recognition"). And a witness can testify to what was said by the caller in a phone conversation, even if the witness cannot himself identify the caller, where identity can be established through the competent testimony of a different witness. See *Corsini v. State*, 238 Ga. App. 383, 384 (1) (519 SE2d 39) (1999) (witness could testify to threat made over the phone even though she could not identify the caller, where the victim testified that she recognized the defendant's voice before dropping the phone, which was then picked up by the witness who heard the threat).

Accordingly, in light of the victim's identification of the caller as Crawford, the deputy fire chief and the boyfriend were authorized to subsequently testify about what they overheard the caller say during the phone conversation. See *Corsini*, 238 Ga. App. at 384 (1). And because their testimony was admissible, Crawford's trial counsel was not deficient, and thus not ineffective, for failing to object to their testimony in this respect. See *Hammock v. State*, 311 Ga. App. 344, 346 (2) (a) (715 SE2d 709) (2011).

(b) In a related argument, Crawford contends that his trial counsel was ineffective for failing to object to the testimony of the deputy fire chief and the victim's boyfriend to the extent that they referred to Crawford as the caller when describing what was said during the phone conversation. According to Crawford, they should not have referred to him as being the caller because they lacked personal knowledge of his voice and instead relied upon hearsay statements made to them by the victim identifying him as the caller.

Even if an objection to the deputy fire chief and the victim's boyfriend making reference to Crawford as the caller would have been sustained because they lacked personal knowledge of his voice,[5] Crawford cannot establish prejudice resulting from the failure to object. As already noted, the victim provided competent testimony identifying Crawford as the caller, and the references to Crawford as the caller made by the deputy fire chief and the victim's boyfriend were merely cumulative of that properly admitted testimony, and thus were not prejudicial. See *Johnson v. State*, 277 Ga. App. 499, 508 (4), n. 3 (627 SE2d 116) (2006) (witness testimony, even if

[5] The potential problem could have been avoided if the deputy fire chief and the victim's boyfriend had referred to the person whom they overheard speaking on the phone simply as the "caller" or the "speaker." As explained in Division 2 (a), their testimony in that regard would have been admissible in light of the victim's competent testimony identifying the caller as Crawford.

improper for lack of personal knowledge, was harmless because merely cumulative of another witness's admissible testimony).

Furthermore, the deputy fire chief testified that he did not know Crawford and that his information about the identity of the caller came from the victim, and the victim's boyfriend likewise testified that he had never met Crawford and had only seen photographs of him. Hence, the jury would not have been confused into thinking that either witness had personal knowledge of the caller's identity, and would have been aware that the only person who could competently identify Crawford as the caller was the victim. Consequently, Crawford cannot show that there is a reasonable probability that, but for his trial counsel's failure to object, the outcome of the trial would have been different, and thus cannot establish ineffective assistance of counsel. See generally *Johnson*, 281 Ga. at 771-772 (2).

*Judgment affirmed. Adams and McFadden, JJ., concur.*