**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 18, 2020**

# In the Court of Appeals of Georgia

A19A2014. WILSON v. THE STATE.

COOMER, Judge.

Travis Wilson appeals his convictions of rape and aggravated sexual battery. After merging two child molestation convictions, the trial court sentenced Wilson to 25 years in prison followed by life on probation for rape, and to a concurrent sentence of 25 years followed by life on probation for aggravated sexual battery. On appeal, Wilson contends: (i) the trial court erred when it denied his plea in bar of former jeopardy premised on alleged prosecutorial misconduct; (ii) the trial court committed plain error when it allowed the State to introduce evidence of the victim's past sexual behavior in violation of Georgia's Rape Shield statute; and (iii) he was denied effective assistance of counsel when his trial attorney failed to object to the

introduction of the victim's past sexual behavior in violation of Georgia's Rape Shield statute. Finding no error, we affirm.

"On appeal from a criminal conviction, we no longer presume the defendant is innocent, and we view the evidence in the light most favorable to the jury's verdict." *Tehrani v. State*, 321 Ga. App. 685, 685 (742 SE2d 502) (2013) (citation omitted).

Wilson was initially tried before a jury in September 2011, which ended in a mistrial. Prior to the commencement of the second trial, Wilson moved for a plea in bar arguing that the prosecutor's misconduct during the first trial prevented the State from retrying him. That motion was denied, and his second trial occurred in April 2013.

The evidence from the second trial shows that the victim, CBR, who was 19 years old at the time of trial, had a tumultuous relationship with Wilson, her stepfather. CBR had a history of behavioral problems and was often suspended from school. During her suspensions, she would spend the day at her mother's church.

On one occasion at the church, a mentor of CBR's asked her if there was anything wrong because her behavior was unusual. CBR eventually told the mentor that her stepfather was "messing around" with her. CBR explained that by "messing

around," she meant that Wilson was "touching on her inappropriately." The church mentor notified authorities.

CBR told the responding social worker that Wilson had sexually abused her. She later told police she thought Wilson might be the father of her 9- month-old child. At trial, CBR detailed multiple instances of sexual conduct that Wilson engaged in with her starting in 2007 or 2008.

After his conviction and sentence, Wilson moved for a new trial. He subsequently waived a hearing, and the trial court denied his motion. This appeal followed.

1. Wilson argues that the trial court erred by denying his plea in bar because the prosecutor engaged in misconduct during the first trial. We disagree.

> Where, as here, a mistrial is granted at the request of a criminal defendant, retrial is not prohibited on the basis of double jeopardy unless it is established that the State intended to goad the defendant into moving for a mistrial in order for the State to avoid a reversal due to prosecutorial or judicial error, or otherwise to obtain a more favorable chance of a guilty verdict on retrial.

*Brown v. State*, 303 Ga. App. 814, 814 (694 SE2d 385) (2010) (citation omitted).

3

At the first trial, Wilson made three different motions for mistrial, with the first two being denied; the trial court granted his third motion. Wilson's first motion came during opening arguments, after the State told the jury that it had evidence that Wilson had committed other rapes against CBR. The State had not previously notified Wilson of the other alleged rapes. The defense renewed its motion during CBR's testimony after she said that Wilson had sex with her two other times that were not alleged in the indictment.

The third and final motion was made after the following exchange during the church mentor's direct examination by the State.

Q. What was [CBR's] demeanor at that time?
A. She was sitting in a chair in my office and I asked her a couple of questions and once she responded to the questions she . . . at one point she started to cry.
Q. And what was your question to her?
A. I asked her was —— had she ever been molested by her stepfather.
Q. And why did you ask her that particular question?
A. Because there were rumors around the church that something was going on with her ——
[Defense Counsel]: Your honor, I'm going to object.

Outside of the presence of the jury, the prosecutor stated she was surprised by the testimony that rumors were going around the church, and requested a curative instruction instead of a mistrial. During discussion and argument with the trial court, another prosecutor appeared and urged the court to deny the motion. Ultimately, the trial court granted a mistrial. In its written order, the trial court explained that it granted a mistrial because (i) evidence of the prior rape by Wilson against CBR should have been disclosed to the defense, (ii) the victim testified that the crimes "occurred on different dates than those alleged in the indictment, thereby depriving the Defense of an alibi defense," and (iii) "the prosecution elicited damaging rumor hearsay testimony about the crimes from a State's witness that could not be cured with any reasonable instruction to the jury."

After the mistrial, the case was reassigned to a different judge who heard both the plea in bar motion and subsequent retrial. Following an evidentiary hearing on the plea in bar, the trial court determined that "the actions of the prosecutor in examining the witness did not amount to prosecutorial misconduct." The trial court further found that "insofar as one might conclude that an inappropriate line of inquiry was pursued, there is no indication that the State sought to goad the defense into seeking a mistrial for purposes of gaining a tactical advantage and a retrial."

When reviewing a grant or denial of a double jeopardy plea in bar, we determine whether, "after reviewing the trial court's oral and written rulings as a whole, the trial court's findings support its conclusion. In general, if a defendant's motion for a mistrial is granted, double jeopardy does not bar a retrial." *Allen v. State*, 302 Ga. App. 852, 852-853 (691 SE2d 908) (2010).

> When a prosecutor, however, goads the defense into making a motion for a mistrial in order for the prosecution to avoid reversal of the conviction because of prosecutorial or judicial error or to otherwise obtain a more favorable chance for a guilty verdict on retrial, the Double Jeopardy Clause will stand as a bar to retrial. The Supreme Court of Georgia has adopted the test set out in *Oregon v. Kennedy*, 456 U. S. 667 (102 SC 2083, 72 LE2d 416) (1982). The inquiry is whether the prosecutor intended to goad the defendant into moving for a mistrial and thus terminate the trial. What is critical is the objective of the prosecutor's conduct. Unless a prosecutor is trying to abort the trial, his or her misconduct will not prohibit a retrial. The question of whether the prosecutor intended to goad the defendant into moving for a mistrial is a question of fact for the trial court to resolve.

Id. at 853 (citation omitted).

Here, the trial court's conclusions are supported by the record. When the defense moved for a mistrial, the State asked for curative instructions as an alternative remedy, and argued against a mistrial. Compare with *State v. Thomas*, 275 Ga. 167,

6

168 (562 SE2d 501) (2002) (double jeopardy principles barred retrial where "the prosecutor did not seek curative instructions, or assert that the trial should continue[.]"). The first judge, who granted the mistrial, said that she was "not suggesting that [the prosecutor] intentionally elicited this response that there were rumors around the church. I think she was as surprised as everyone else[.]" The successor judge heard testimony, which she found credible, from the witness that she had not been told by the prosecutor that there were certain things she could not say on the stand at trial. The judge further found that under Georgia's prior Evidence Code, in effect at the time, the line of inquiry was not inappropriate and that the response by the witness was not "something [the prosecutor] could have known because . . . [she] didn't talk to her before she testified." While an attorney's failure to prepare a witness may constitute poor trial preparation — which can lead to substantial delay and inefficiency, by potentially wasting years of citizen's lives and an indeterminate amount of public resources — the trial court found, and we are bound to accept, that the prosecutor's shortcomings were not undertaken with any intention to abort the proceedings. See *Steward v. State*, 251 Ga. App. 657, 658 (555 SE2d 33) (2001) ("Although the record shows that the prosecutor did an inadequate job of instructing the state's witnesses about what they could and could not say . . .

7

[Defendant] has not shown that the state stood to gain by retrying the case or that the prosecutor's actions were intended to subvert the protections afforded by the Double Jeopardy Clause." (citation and punctuation omitted)).

We therefore conclude that based on the totality of the evidence before both judges, the trial court's findings were authorized by the evidence in the record. Accordingly, the trial court properly denied Wilson's plea in bar on the grounds of double jeopardy.

2. Wilson contends that the trial court committed plain error by allowing the jury to hear evidence in violation of Georgia's Rape Shield statute that CBR thought Wilson might have fathered her child. We disagree.

At trial, the State presented testimony that CBR told both a police officer and a friend at school that she thought her stepfather might be the father of her child. Wilson argues on appeal that this evidence was inadmissible. He did not, however, object to the testimony at trial. We may therefore only analyze this claim for plain error.[1] *State v. Parks*, 350 Ga. App. 799, 807-808 (830 SE2d 284) (2019).

---

[1] Wilson also complains about the State telling the jury during its opening statement that CBR had given birth to a boy. We will not review this claim because Wilson did not object, and plain error is not available to review comments made by lawyers during opening statements. *Simmons v. State*, 299 Ga. 370, 372-373 (2) (788 SE2d 494) (2016).

The plain error test for evidentiary rulings is well established.

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016) (citations and punctuation omitted).

Pretermitting whether it was error — or clear and obvious error — to admit evidence that CBR at one time thought Wilson could be the father of her child, Wilson cannot demonstrate that this affected his substantial rights. His plain error claim therefore fails. See *Wilson v. State*, 291 Ga. 458, 460 (729 SE2d 364) (2012) (where one prong of plain error is not satisfied "we need not address the other prongs of the analysis.").

9

The third prong of the plain error test is not met here. At trial, CBR's mother read a statement she gave to police in which she told them CBR informed her Wilson was not the father of her child. Following that testimony, the parties entered a stipulation into evidence that Wilson was not the father. Because the jury affirmatively knew that Wilson was not the father of CBR's child, any evidence that CBR believed at one time that Wilson might have been the father was harmless and did not likely affect the outcome of the trial. See *Atkins v. State*, 304 Ga. 240, 249 (3) (818 SE2d 567) (2018) ("[I]n any event, the defendant . . . *was* allowed to present evidence that the victim had been impregnated by someone other than [the defendant].").

3. For the first time on appeal, Wilson argues that his trial counsel was ineffective for failing to object to evidence that CBR thought he might be the father of her child. Because he did not raise this issue below, Wilson waived this claim of error. *Martin v. State*, 306 Ga. 538, 546 (6) (832 SE2d 402) (2019).

However, even reviewing Wilson's ineffective assistance of counsel claim on the merits, it fails for the same reason as his plain error argument — the jury heard that he was not the father of CBR's child. Therefore, even if Wilson's counsel should have objected to this evidence, its admission was harmless. See *Crawford v. State*,

10

318 Ga. App. 270, 278 (2) (732 SE2d 794) (2012) ("If [a defendant] is unable to establish one of the prongs of the *Strickland*[2] test, he cannot succeed on his claim of ineffective assistance[.]") (citation omitted)).

*Judgment affirmed. Doyle, P. J., and Markle, J., concur*.

---

[2] *Strickland v. Washington*, 466 U.S. 668, (104 SCt 865, 80 LE2d 674) (1984).